**Mickel Dan ANDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00012–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 28, 2000.

Decided Feb. 29, 2000.

Sydney Young, Paris, for appellant.

Kerye Ashmore, Lamar County Attys. Office, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Mickel Dan Anderson appeals his conviction for capital murder, with a mandatory sentence of life imprisonment in the Texas Department of Criminal Justice, Institutional Division. TEX. PEN.CODE ANN. § 19.03 (Vernon 1994); TEX.CODE CRIM. PROC. ANN. art. 37071, § 1 (Vernon Supp. 2000).[1] Anderson raises five issues on appeal: 1) the evidence is legally and factually insufficient to uphold his conviction for capital murder; 2) the trial court erred in admitting evidence of the victim's character in order to show conformity; 3) the trial court erred in admitting hearsay, to wit, a statement of the murder victim to her husband that she was afraid of Anderson; 4) the trial court erred in admitting hearsay, to wit, a conversation the murder victim had with Anderson; and 5) the trial court erred in admitting tape recordings of the 9–1–1 emergency telephone calls, and permitting the State to play the recordings during its summation to the jury.

### Legal Sufficiency

Legal sufficiency is reviewed by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995); *Purvis v. State*, 4 S.W.3d 118 (Tex. App.-Waco 1999, no pet. h.). The verdict must stand unless it is found to be irrational or supported by no more than a mere modicum of evidence. Additionally, the trier of fact is the sole judge of the weight and credibility of the witnesses and may believe all, none, or part of any witness's testimony. *Purvis*, 4 S.W.3d at 121. A finding that the evidence is legally insufficient requires reversal and bars a retrial. *Groome v. State*, 957 S.W.2d 919, 920–21 (Tex.App.-Texarkana 1997, no pet.).

### Factual Sufficiency

In reviewing a factual sufficiency point, the appellate court views the evidence without the prism of in the light most favorable to the prosecution. The verdict is set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In recently reaffirming the *Clewis* standard of factual sufficiency review, the majority opinion of the Court of Criminal Appeals stated as follows:

> [T]he reviewing court must always remain cognizant of the fact finder's role and unique position, a position that the reviewing court is unable to occupy. The authority granted in Clewis to disagree with the fact finder's determina-

---

1. Anderson was fifteen years old at the time of the offense; he was certified for trial as an adult. These proceedings are not challenged on appeal.

tion is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence.

*Johnson v. State*, No.1915–98, 2000 WL 140257, at *6, —— S.W.3d ——, —— (Tex. Crim.App. Feb.9, 2000).

▮ The State charged that Anderson did:

Count One ... intentionally and knowingly cause the death of an individual, namely, Arnetta Rogers, by stabbing and cutting the said Arnetta Rogers, and the defendant was then and there in the course of committing and attempting to commit the offense of Burglary of a Habitation with intent · to commit the aggravated assault of J.D. Rogers

. . . .

Count Two ... intentionally and knowingly cause the death of an individual, namely, Arnetta Rogers, by stabbing and cutting the said Arnetta Rogers, and the defendant was then and there in the course of committing and attempting to commit the offense of Burglary of a Habitation of J.D. Rogers by knowingly and intentionally entering said habitation without the effective consent of J.D. Rogers, the owner thereof, and committing the felony offense of Aggravated Assault of J.D. Rogers

. . . .

Count Three ... unlawfully, intentionally and knowingly cause the death of an individual, Arnetta Rogers, by stabbing and cutting the said Arnetta Rogers with a knife, and did then and there use a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury.

The charge to the jury tracked the language of the indictment. *See* TEX. PEN. CODE ANN. § 19.03(a)(2).

J.D. and Arnetta Rogers resided in Blossom, Lamar County, Texas. J.D. was seventy-eight years old and retired. He had been married to Arnetta, who was seventy-nine years old, for fifty-four years. A few days prior to June 16, 1998, J.D. and Arnetta had a conversation with Anderson on the driveway of their home. Anderson had lived across the street from the Rogerses and they had known Anderson since he was six or seven years old. On June 16, 1998, the Rogerses were in their living room when they heard a knock at the back door. Arnetta answered the door and told J.D. that it was Mickel Anderson asking if he could do lawn work for them, that he needed some money. Arnetta told Anderson that they could not afford to hire anyone to do their lawn work. She told J.D. that she wished Anderson would stop coming around because she was afraid of him. The Rogerses then went into the kitchen to eat supper. J.D. told Arnetta to lock the back door, which, to his knowledge, she did. After they started to eat, they heard a second knock at the back door. Arnetta got up to see who was there. J.D. testified that he heard a sound like feet shuffling. Then J.D. heard Arnetta say "Mickel," and then saw his wife fall down. He went over to where she was and heard her mutter to call somebody. J.D. then felt something hit him in the back, causing him great pain. He saw a knife blade; he was bent over and threw up his arm to defend himself, and the knife caught him in the back again on the other side. J.D. then saw "all of the left side" of the person leaving through the back door. He identified the person as Anderson. J.D. testified that Anderson was wearing dark clothes. He saw blood and saw that his wife was not moving, so he went to the living room to call 9–1–1. J.D. had lost a lot of blood, but was able to tell the emergency medical personnel what happened before being taken to the emergency room. J.D. testified, over objection, that his wife was in the habit of calling him before she let anyone in the house, unless the person was a friend. They did not consider

Anderson a friend, and J.D. testified that he did not give permission or consent for Anderson to enter his house. J.D.'s bloody clothing was introduced into evidence.

Emergency medical personnel called to the scene testified as to the large amount of blood. They attempted to aid Arnetta but were unable to do so. They performed some first aid to J.D.; he was alert and aware of what was going on at the time. J.D. identified Anderson as the person he observed at the scene of his wife's murder, and the assault on him.

Although the testimony was disputed, a witness testified to overhearing Anderson tell his mother, in a meeting held at a juvenile detention center, that he had killed Arnetta, and that he had messed up. DNA testing was done on a blood stain found on Anderson's shirt at the time of his arrest, and it was found to be consistent with blood samples taken from J.D.'s bloody clothing.

The defense brought forth evidence showing, *inter alia*, that there were no blood stains found in the Anderson home after the incident and there were no bloody footprints found on the walkway immediately outside the home. The evidence also showed no fingerprints capable of identification were found at the scene. Questions were also raised about J.D.'s identification of Anderson, and regarding the presence of another unidentified vehicle and individual in the area at the time of the crime.

Viewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found beyond a reasonable doubt that Anderson had committed the murder of Arnetta Rogers in the course of a burglary of the Rogerses' home. Viewing all of the evidence without the prism of in the light most favorable to the verdict, we cannot say that the jury's determination was against the great weight and preponderance of the evidence, or that manifest injustice had resulted.

We hold that there was both legally and factually sufficient evidence to support the verdict and judgment in this case. This issue is overruled.

### Habit/Character Evidence

■ In the next issue on appeal, Anderson complains that the trial court erred in admitting J.D.'s testimony that Arnetta was in the habit of not letting anyone she did not know into their house. In his brief, Anderson characterizes this as "character" evidence regarding Arnetta. The State argues that this is habit evidence admissible under TEX.R. EVID. 406.

The evidence was offered, and objected to, in the following manner:

Q. All right. Mr. Rogers, you indicated you had lived with—had been married to Arnetta for how long?

A. 54 years.

Q. Were you acquainted with her habits, her routines, how she did things there at the house?

A. Yes.

Q. Could you describe to the jury what her habit or routine was in so far as letting someone in that she didn't know well?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

A. She wouldn't let anybody in. If I was there, she would [have] called me before she would admit somebody, unless it was a friend.

Q. Was Mickel Anderson a friend?

A. No.

■ First of all, we question whether the objection raised by defense counsel preserved the complaint for appeal. The objection did not advise the trial court of the reason therefor, which is required. As we held in *Snellen v. State*, 923 S.W.2d 238, 242 (Tex.App.-Texarkana 1996, pet. ref'd), the mere saying of "Objection" without stating the specific grounds therefor, is insufficient to preserve error unless the

grounds are otherwise made known to the trial court. *See also* Tex.R. Evid. 103(a)(1).

Nevertheless, even assuming error was properly preserved, we find no reversible error. The State correctly characterizes the proffered evidence as habit evidence, relevant whether corroborated or not, and regardless of the presence of eyewitnesses, to prove that the conduct of the person on a particular occasion was in conformity with the habit. Tex.R. Evid. 406; *Miller v. State*, 882 S.W.2d 936, 938–39 (Tex.App.-Beaumont 1994, no pet.); *Waddell v. State*, 873 S.W.2d 130, 138 (Tex.App.-Beaumont 1994, pet. ref'd).

■ In order to offer evidence of habit, the proponent must at least demonstrate a regular practice of meeting a particular kind of situation with a specific kind of conduct. *Bishop v. State*, 837 S.W.2d 431, 435 (Tex.App.-Beaumont 1992), *aff'd*, 869 S.W.2d 342 (Tex.Crim.App.1993) (quoting *Jones v. Southern Pac. R.R.*, 962 F.2d 447, 449 (5th Cir.1992)). The quoted testimony indicates that the State has done so in this case. The trial court did not err in overruling Anderson's objection. This point is overruled.

### Testimony about Arnetta's "Fear" of Anderson

In the next two issues raised on appeal, Anderson contends the trial court erred in permitting J.D. to testify that Arnetta had told him that she was afraid of Anderson, and also in allowing J.D.'s testimony as to what Arnetta told him about Anderson's visit shortly before the commission of the crime, which also expressed fear of Anderson.

Anderson contends that both statements are inadmissible hearsay and do not come within any recognized exception to the hearsay rule. Tex.R. Evid. 801, 803. Anderson filed a pretrial motion in limine seeking to exclude evidence that Arnetta told J.D. that Anderson frightened her. The record indicates that the motion was denied, but that the State was required to approach the bench prior to bringing forth testimony on the matter. In his opening statement, the district attorney referred to the statements, and Anderson's counsel moved for a mistrial, which was denied. At trial, out of the presence of the jury, the district attorney stated he would offer J.D.'s testimony as to Arnetta's statements that she was afraid of Anderson. Defense counsel objected to the statements as "pure hearsay." The State argued that the statements fell within two exceptions to the hearsay rule: state of mind and present sense impression. The trial court overruled the defense's objection, and J.D. testified Arnetta twice expressed to him her fear of Anderson.

■ The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the discretion of the trial court. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim.App.1995).

### Present Sense Impression

■ Rule 803(1) of the Rules of Evidence provides the "present sense impression" exception to the hearsay rule. The rule excepts from the general rule denying admissibility to hearsay a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. Tex.R. Evid. 803(1). The rationale for this exception is that 1) the report at the moment of the thing then seen or heard is safe from any error from defect of memory of the declarant; and 2) there is little or no time for calculated misstatement. *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex.Crim.App.1992); *Chambers v. State*, 905 S.W.2d 328, 330 (Tex.App.-Fort Worth 1995, no pet.); *Kubin v. State*, 868 S.W.2d 394, 396 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd).

■ In this case, however, Arnetta's statements express more than just an observation or explanation from an observa-

tion; they express more than just her observation of Anderson, or that he said something. They express an opinion or conclusion regarding his previous presence in her home. Along these lines, we think they are similar to the statements of a police officer regarding the intoxication of the defendant in *Beauchamp v. State*, 870 S.W.2d 649 (Tex.App.-El Paso 1994, pet. ref'd), which were held not admissible under Rule 803(1). The El Paso court stated:

> We do not believe that a statement of *opinion* about a condition or event, as opposed to a statement of description or explanation about something observed or otherwise sensed, qualifies as a present sense impression.

*Id.* at 652. We therefore conclude that Arnetta's statements were not admissible under the present sense impression exception to the hearsay rule.

### State of Mind Exception–Generally

■ The State also argues that J.D.'s testimony regarding his wife's fear of Anderson is admissible under Rule 803(3) which sets forth, as an additional exception to the hearsay rule:

> A statement of the declarant's then existing **state of mind**, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or term of declarant's will.

TEX.R. EVID. 803(3) (Emphasis added.).

■ It should first be noted that in the present case, the state of mind sought to be proved is that of the victim, not the defendant. This Court has previously held that a homicide victim's state of mind prior to any fatal incident is generally neither at issue, nor probative of any material issue in a murder prosecution. *Norton v. State,*

771 S.W.2d 160, 165 (Tex.App.-Texarkana 1989, pet. ref'd). Exceptions to this rule are recognized, however, for cases involving defense claims of self-defense, suicide, or accident. *Kennedy v. State,* 385 So.2d 1020, 1021(Fla.Dist.Ct.App.1980); *State v. Bauer,* 598 N.W.2d 352, 366 (Minn.1999); *Norton,* 771 S.W.2d at 165; 2 BARBARA E. BERGMAN & NANCY HOLLANDER, WHARTON'S CRIMINAL EVIDENCE § 6:22 (15th ed. 1998 & Supp.2000).

### Testimony is Relevant to Show Lack of Consent

In this case, the testimony of Arnetta's state of mind is an issue because one of the accusations required to be proven by the State is that Anderson intentionally and knowingly caused the death of Arnetta "and the defendant was then and there in the course of committing and attempting to commit the offense of Burglary of a Habitation of J.D. Rogers by knowingly and intentionally entering said habitation without the effective consent of J.D. Rogers...." The State argues that evidence of Arnetta's state of mind, that is, her fear of Anderson, was probative of the fact that Anderson's entry into the Rogerses' home was not consensual. In order to prove the offense of capital murder, the State was required to prove that Anderson intentionally murdered Arnetta in the course of committing or attempting to commit burglary. TEX. PEN.CODE ANN. § 19.03(a)(2); *Whitaker,* 977 S.W.2d at 598. All degrees of the offense of burglary require the State to prove the owner's lack of effective consent. TEX. PEN.CODE ANN. §§ 30.02, 30.04 (Vernon Supp.2000), § 30.03 (Vernon 1994); *Gregg v. State,* 881 S.W.2d 946, 951 (Tex.App.-Corpus Christi 1994, pet. ref'd).

Therefore, we find that Arnetta's state of mind prior to the crime is relevant to demonstrate that she would not and did not consent to Anderson's entry into her home. The fact that she expressed her fear is certainly probative of her lack of

consent to his entry.[2]

### State of Mind Hearsay Exception

 That such evidence is relevant does not determine the hearsay issue. While testimony describing the victim's mental condition is admissible under Rule 803(3)—the "state of mind" exception—the testimony may not go beyond the victim's mental condition to produce evidence of events, that events occurred or conditions existed which produced the victim's mental condition. *Vann v. State*, 853 S.W.2d 243, 250 (Tex.App.-Corpus Christi 1993, pet. ref'd) (citing *Gibbs v. State*, 819 S.W.2d 821, 837 (Tex.Crim.App.1991)). The *Gibbs* opinion ruled that the state of mind exception to the hearsay rule does not encompass a statement of memory or belief to prove the fact remembered or believed. *Gibbs*, 819 S.W.2d at 837.

In *Buhl v. State*, 960 S.W.2d 927 (Tex. App.-Waco 1998, pet. ref'd), *cert. denied*, 525 U.S. 1057, 119 S.Ct. 623, 142 L.Ed.2d 561 (1998), the Court held that the defendant's statement, testified to by a third party, that defendant was afraid of the victim because the victim often pulled a gun on him was not admissible under the state of mind exception. The trial court was acting within its discretion in ruling that the testimony was offered to prove the truth of a fact that declarant remembered or believed, i.e., that the victim had pulled a gun on the defendant in the past. *Id.* at 933. The *Buhl* court compared its ruling with *Pena v. State*, 864 S.W.2d 147 (Tex.App.-Waco 1993, no pet.), and *Williams v. State*, 927 S.W.2d 752 (Tex. App.-El Paso 1996, pet. ref'd). In *Pena*, the Waco court held admissible, under the state of mind exception, a witness's testimony that the victim wanted to leave the defendant, but felt economically trapped. This statement reflected the victim's state of mind and was not offered to prove the truth of the matter asserted. *Pena*, 864 S.W.2d at 149. In *Williams*, the El Paso court held admissible testimony that de-

fendant would hurt the victim or her child if she returned to her residence:

Hill's testimony was not offered to show that appellant would in fact hurt [the victim] or take [her daughter] if confronted, but to reveal her state of mind at the time of the offense. Even though Hill's testimony was admitted before appellant testified, it later served to rebut appellant's claim that the victim was the aggressor and physically attacked him and that she threatened to take [the daughter] from him.

*Williams*, 927 S.W.2d at 764.

Anderson cites *Love v. State*, 581 S.W.2d 679, 681 (Tex.Crim.App. [Panel Op.] 1979), but this case is distinguishable from the present case, because the testimony held inadmissible in *Love* included predictions by the victim of what the defendant might do, rather than merely reflecting the victim's state of mind.

We hold that the testimony was proper state of mind testimony and that the trial court did not abuse its discretion in admitting it under the state of mind exception to the hearsay rule. Tex.R. Evid. 803(3).

### Unfair Prejudice

 Anderson also contends that the probative value of such testimony is outweighed by the danger of its unfair prejudice. Under Tex.R. Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Such an objection requires the trial court to engage in a balancing process, that is, to weigh the probative value of the evidence against its tendency to suggest a decision on an improper basis. Appellate review is on an abuse of discretion standard. Rule 403 carries with it a presumption that the evidence will be more probative than prejudicial. *Tennison v. State*, 969 S.W.2d 578, 580 (Tex.App.-Texarkana 1998, no pet.). In order to be unfairly prejudicial, the proffered evidence must have a tendency

---

2. J.D. testified that he and Arnetta owned the house together.

to suggest a decision on an improper basis. *Perkins v. State*, 902 S.W.2d 88, 99 (Tex. App.-El Paso 1995), *supplemented by*, 905 S.W.2d 452 (Tex.App.-El Paso 1995, pet. ref'd).[3]

We find nothing in this testimony that would unfairly suggest to the jury that their verdict should be rendered on any basis except for properly admitted evidence. While the eyewitness's testimony of the deceased's spouse is, by its very nature, emotional, J.D. was in fact present at the scene of his wife's murder. There is nothing unfairly prejudicial about his testimony.

We hold that the trial court did not abuse its discretion in admitting the testimony. These points of error are overruled.

### Admission of the 9–1–1 Tape

Anderson argues in the next issue that the trial court committed reversible error in admitting into evidence a tape of the 9–1–1 call made by J.D. immediately after his wife's murder and the attack on him. We understand the objection to have been made under Rule 403, and its basis to be that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.[4]

Rule 403 of the Rules of Evidence provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Tex.R. Evid. 403. Under this rule, relevant evidence is presumed to be more probative than prejudicial. Once an *objection is made under* Rule 403, the trial judge is required to engage in a balancing process, i.e., weigh the probative value of the evidence against the tendency of the evidence to suggest a decision on an improper basis. The appellate court reviews the trial court's determination in this regard under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 389, 391 (Tex.Crim. App.1990). In *Munoz v. State*, 932 S.W.2d 242, 244 (Tex.App.-Texarkana 1996, no pet.), this Court, applying the *Montgomery* standards, affirmed a trial court's admission of a tape recording of a 9–1–1 emergency call, *inter alia*, a Rule 403 objection. We found nothing on the tape in that case which would tend to cause jurors "to act on emotion rather than evidence." *Id.* at 244.

We likewise find nothing on the 9–1–1 tape in this case that would cause the jury to act on any basis other than consideration of the evidence presented to them. The tape covers the period immediately after the murder of Arnetta, and contains the statements of an eyewitness, who specifically identifies Anderson as the killer. This is highly probative evidence for the State, and while certainly prejudicial to Anderson,[5] it is not "unfairly prejudicial" and was, therefore, properly admitted by the trial court. We find that the trial court did not abuse its discretion. This point is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.

---

3. See also the next issue on appeal.

4. At trial, counsel stated, as one of her grounds for objection, that the purpose of playing the tape was "inflaming the prejudices of the jury." Further, counsel answered affirmatively to the trial judge's question as to whether she had made a "401" objection. (Rule 401 pertains to relevance.)

5. "[V]irtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party." *Montgomery*, 810 S.W.2d at 378.