543 S.E.2d 552

**The STATE, Respondent,**

v.

**Donny G. BROWN, Appellant.**

No. 25258.

Supreme Court of South Carolina.

Heard Jan. 24, 2001.
Decided March 12, 2001.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney

General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken for respondent.

MOORE, Justice.

Appellant was convicted of murder for shooting to death his twenty-five-year-old grandnephew Shane Hammond (Victim). Appellant admitted killing Victim but claimed self-defense. He appeals on the ground he was prejudiced by the improper admission of bad character evidence. We affirm.

## FACTS

Victim was living in appellant's home. The State put up evidence that the day before the killing, appellant and Victim argued over rent money. Two eyewitnesses, Jack Williams and Kelly Williams, testified they saw appellant hit Victim on the head several times with a blunt tool, lacerating Victim's scalp. Appellant was holding a gun in his other hand at the time. Victim was unarmed and simply tried to fend off the attack by covering his head.

The next day, Victim returned to the house to retrieve his belongings. Appellant's wife, Erlene Brown, testified that when Victim arrived, he went into the kitchen. Mrs. Brown went down the hall to the bedroom to get Victim's things. She saw her husband in the hallway with a billy club behind his back and she said to him, "Don't do anything, don't say anything. [Victim's] just come to get his clothes, you know, and he's leaving and I'm getting his clothes for him."

As Mrs. Brown came back down the hall, she heard scuffling in the kitchen. Appellant and Victim were fighting and appellant was hitting Victim with the billy club. Mrs. Brown tried unsuccessfully to separate the two men. She and her grandson, Billy, then fled the house. They heard two shots as they were getting in the car. Before driving off, Mrs. Brown saw appellant come out of the house with a gun in his hand. She testified, "I was afraid he might shoot us, too."

Appellant testified he was in his bedroom when Victim entered the house. He went down the hall to the kitchen and told Victim to leave. When appellant turned around, Victim

"blind sided" him. Appellant testified he thought Victim was going to kill him and that he was fighting for his life.

During the fight, appellant found his gun on the kitchen floor where he claimed it had fallen from the top of the refrigerator. He shot Victim as Victim was charging into him. Victim continued attacking and, as they tussled over the gun, appellant shot again, killing Victim.

The trial judge submitted murder and voluntary manslaughter to the jury and gave a charge on self-defense. Appellant was convicted of murder and sentenced to forty years.

## ISSUE

Was evidence of appellant's bad character improperly admitted? If so, was the error harmless?

## DISCUSSION

Appellant contends the trial judge erroneously admitted character evidence that was unfairly prejudicial. He complains of three specific instances.

### a. Evidence of appellant's violent nature

■ During Mrs. Brown's testimony, she was asked why she fled during the fight. She responded, "I know the moods of my husband and I knew I had to get out." The Solicitor asked what mood appellant was in that night and Mrs. Brown stated that he had become "very angry and agitated." The Solicitor then asked, "What happens when he becomes angry and agitated?" Over appellant's objection, Mrs. Brown stated, "He gets violent." Appellant contends this testimony impermissibly attacked his character. He claims he was prejudiced because the Solicitor argued this violent propensity indicated appellant was the aggressor in the fight with Victim.

■ Character evidence is not admissible to prove the accused possesses a criminal character or has a propensity to commit the crime with which he is charged. *State v. Nelson,* 331 S.C. 1, 501 S.E.2d 716 (1998). Rule 404(a), SCRE, states the general rule that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."

The State argues, however, that the evidence appellant reacts violently was admissible as evidence of habit under Rule 406, SCRE, which provides in pertinent part:

> Evidence of habit of a person ... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit....

Federal courts have recognized the tension between Rule 406 (habit) and Rule 404 (character) and noted the difficulty in distinguishing between admissible evidence of habit and inadmissible character evidence.[1] As indicated in the advisory committee's note to Federal Rule of Evidence 406, which is identical to our Rule 406, the distinguishing feature of habit is its degree of specificity. Habit has been described as conduct that is "situation-specific" or "specific, particularized conduct capable of almost identical repetition." *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 204 (3d Cir.2000); *Simplex*, 847 F.2d at 1293. This Court has defined the term "character," on the other hand, as "a generalized description of a person's disposition or a general trait such as honesty, temperance, or peacefulness." *State v. Nelson*, 331 S.C. at 7, 501 S.E.2d at 718.

In this case, Mrs. Brown's testimony identified no specific conduct but simply indicated appellant's general propensity to become violent. We find this evidence inadmissible as evidence of habit under Rule 406. *Cf. Perrin v. Anderson*, 784 F.2d 1040 (10 th Cir.1986) (evidence of specific violent incidents admissible as habit evidence where party invariably reacted with extreme violence to any contact with uniformed police officer).

---

1. *See, e.g., Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7 th Cir.1988) ("We are cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes."); *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1523 (11 th Cir.1985) ("The difficulty in distinguishing inadmissible character evidence from admissible habit evidence is great. Often the line between the two is unclear....").

▉▉ Although evidence of appellant's bad character was improperly admitted, we find any error harmless. Whether an error in the admission of evidence is harmless generally depends upon its materiality in relation to the case as a whole. *State v. Reeves,* 301 S.C. 191, 391 S.E.2d 241 (1990). The erroneous admission of character evidence is harmless beyond a reasonable doubt if its impact is minimal in the context of the entire record. *State v. Forney,* 321 S.C. 353, 468 S.E.2d 641 (1996). For instance, we have found such error harmless where there is other properly admitted evidence of conduct demonstrating the particular character trait in question. *See State v. Braxton,* 343 S.C. 629, 541 S.E.2d 833 (2001).

▉▉ In this case, appellant's use of force during his argument with Victim the previous day clearly demonstrates appellant's propensity to become violent. Evidence of this conduct, which was properly admitted,[2] reveals the same information about appellant as Mrs. Brown's testimony. Accordingly, we find any error in the admission of Mrs. Brown's testimony harmless beyond a reasonable doubt.

### b. Evidence appellant carried a gun

▉▉ In questioning appellant's grandson, Billy, the Solicitor asked if Billy had seen appellant with a gun on the night of the shooting. Billy answered, "I didn't see it that night but I knew [appellant] always carried it on him." When asked what he meant by that, Billy testified over appellant's objection, "He usually had [the gun] in his belt or he kept it in his right pocket or usually just somewhere near him all the time." Similarly, Mrs. Brown testified, again over appellant's objection, that she did not see the gun that night but "the gun either is in his pocket, tucked in his belt right there, or either on the bed beside him." When asked, "Does it ever leave him?" she answered, "no."

Appellant contends this testimony was erroneously admitted as habit evidence. He claims he was unfairly prejudiced by its admission because, while he admitted shooting Victim in self-

---

2. In homicide cases, evidence of a previous difficulty between the accused and the decedent is admissible to show the animus of the parties and who was the probable aggressor. *State v. Taylor,* 333 S.C. 159, 508 S.E.2d 870 (1998).

defense, he denied carrying a gun down the hall into the kitchen and accosting Victim.

We find this evidence was properly admitted as habit evidence. Unlike the testimony regarding appellant's general predisposition to violence, this evidence describes a pattern of specific, particularized conduct. Under Rule 406, this evidence was properly admitted to show appellant acted in conformity with this pattern of behavior on the night in question. *See United States v. Yazzie*, 188 F.3d 1178 (10 th Cir.1999) (reflexive action of placing gun in waistband admissible as habit evidence because uniformity of behavior established habitual nature).

### c. Evidence of appellant's gambling

On direct examination, Mrs. Brown testified that the house she lived in with appellant was titled in her name. This testimony was part of her explanation that Victim paid the rent to her and not appellant. On cross-examination, Mrs. Brown was asked, "You and [appellant] bought the house together and put your name on the title?" Mrs. Brown responded, "No. . . . It was necessary to borrow money on the house to keep the bills going. And I had to have the house in my name in order to do that because of his credit rating. [Appellant] was gambling a lot and I had to pay the bills."

Appellant objected but the trial judge ruled he had opened the door to this response. *See State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (appellant cannot complain of prejudice from evidence to which he opened the door). Appellant argues Mrs. Brown's testimony was not responsive to the question and it constituted character evidence that unfairly prejudiced him.

Even if appellant is not held to have opened the door to this testimony, we find its admission was not so prejudicial as to require reversal. Whatever negative connotation appellant's gambling may have had, it was not mentioned again during the trial and did not imply any propensity on appellant's part to commit the violent crime with which he was charged. We find this evidence had minimal impact in the context of the

entire record and any error in its admission was harmless beyond a reasonable doubt. *State v. Forney, supra.*

**AFFIRMED.**

TOAL, C.J., and WALLER, BURNETT and PLEICONES, JJ., concur.