STATE of Missouri, Plaintiff–Respondent,

v.

Jackie Lee HEMBY, Jr., Defendant–Appellant.

No. 23940.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 9, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 26, 2001.

Application for Transfer Denied Jan. 22, 2002.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for Respondent.

JOHN E. PARRISH, Judge.

Jackie Lee Hemby, Jr., (defendant) was convicted following a jury trial of unlawful use of a weapon.[1] § 571.030.1, RSMo Cum.

---

Supp.1999. Defendant was charged as and found to be a prior offender. § 558.016.1 and .2, RSMo 1994. He was sentenced to imprisonment for a term of three years. This court affirms.

For purposes of appellate review, all evidence favorable to the state is accepted as true, including all favorable inferences drawn from the evidence. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Evidence and inferences to the contrary are disregarded. *Id.*

There is a gravel turnaround in front of Dennis Stewart's residence. He had just finished constructing it October 2, 1999, when defendant drove onto the turnaround at a high rate of speed. Defendant stopped. Mr. Stewart explained, "I asked him—You know, I was a little bit upset that he tore my driveway up, and I says, 'Do you have a problem or what?' you know. And he said that he was f——ing lost." After an exchange of words, defendant told Mr. Stewart that he did not like him; that he was going to blow his head off. Defendant stuck a 12–gauge shotgun out of his car window. Mr. Stewart heard the hammer "click back" on the shotgun.

Mr. Stewart testified that he took the shotgun away from defendant. He was asked the following questions and gave the following answers:

Q. Well, let me ask you, how did you take it from him?

A. My first—My first reaction was—is I jammed the barrel up against the case of the door casing of the window.

Q. So it was no longer pointing at you?

A. It was deflecting—I grabbed it like this and threw it over like that, and then he was struggling with it. I didn't

---

1. Defendant was also charged with the offense of assault in the second degree, § 565.060, RSMo 1994. He was found not guilty of that offense.

know if it was going to discharge or not, so I proceeded to reach in and I started choking him, figuring I could get the gun away from, which I did do. And then he started coming out of the car at me.

Mr. Stewart jammed the barrel of the gun into a tree stump in order to clog the barrel with dirt. He broke the gun apart, took out the shell that was in the gun and threw it away.

Defendant pulled a shovel with about a five-foot handle from his car. He hit Mr. Stewart on the hand and forehead with the shovel. Mr. Stewart took the shovel away from defendant, got defendant in a headlock, and wrestled him to the ground. Mr. Stewart ran to his house to get his dog. He looked back and saw defendant sitting in his car "trying to load a .410." Defendant was unable to load the gun. He tore off his shirt and ran into a wooded area.

Defendant presents one point relied on. It contends defendant was not permitted to present testimony at trial that Dennis Stewart had threatened other people; that this was error. Defendant argues he should have been permitted to present testimony of Toni Lederle. He argues the trial court abused its discretion in refusing to allow Ms. Lederle to testify that Dennis Stewart "had threatened to shoot others if they did not get off his property." Defendant claims "that Mr. Stewart's wife's testimony, which implied that Mr. Stewart would only fight in self-defense, opened the door to this proferred [sic] testimony; the evidence was relevant because it tended to show Mr. Stewart's aggressive nature on the day in question and supported [defendant's] defense while refuting the State's evidence; and it was admissible habit evidence."

The testimony of Mrs. Stewart to which defendant's point refers occurred during defendant's attorney's cross-examination.

Mrs. Stewart testified about her observations of the events that led to the charges for which defendant was being tried. Near the end of her cross-examination, defendant's attorney inquired about how long she and Mr. Stewart had been married. He then asked Mrs. Stewart if she would characterize her husband "as a passive or aggressive type of personality." She answered that she did not know that she would characterize him as anything. She said she thought he would try to protect himself if he felt threatened. Defendant's attorney asked if she had "personal knowledge of him ever having physical contact with anyone, angrily." The prosecuting attorney objected that the inquiry was irrelevant. Defendant's attorney voluntarily rephrased his question. He asked Mrs. Stewart if she had known her husband to ever be in a fight. She answered, "Actually, no, I haven't." She added, "I've never witnessed him having a fight."

At the conclusion of Mrs. Stewart's testimony, the trial court recessed for lunch. The next event that appears in the trial transcript is the calling of a witness, Toni Lederle, by defendant's attorney. Neither the transcript nor the docket entry that relates to the trial proceedings reflects the state had rested. Neither provides an explanation for Ms. Lederle being presented by defendant's attorney during the state's case-in-chief. Although neither the transcript nor the docket entry states whether the jury was present when Ms. Lederle was called to testify, the transcript index identifies Ms. Lederle's testimony as being "[o]utside the [p]resence of the [j]ury."

The transcript recounts that a witness was sworn by the judge and instructed to be seated. The witness was asked her name. She identified herself as Toni Lederle. The judge told defendant's attorney he could inquire. Defendant's attorney announced he was proceeding with an offer

of proof. He inquired about her acquaintance with Mr. Stewart. She told the trial court Mr. Stewart had threatened her; that he told her he would shoot her if she did not get off his property. She said this occurred "the day that this event happened. . . ."

Ms. Lederle told the trial court her family had experienced a problem with Mr. Stewart on another occasion; that he accused them of stealing from his house. She said she heard Mr. Stewart threaten to shoot her uncle.

At the conclusion of defendant's attorney's questions to Ms. Lederle, the prosecuting attorney asked her if she had been at the Stewart property when the event that was the basis of the criminal charges against defendant occurred. She said she had been there after the police arrived; that the police asked her to leave. She stated that she had not been at the Stewart's property before the police arrived.

After defendant's attorney told the trial court he had no other questions, the judge stated, "The Court, having heard the offer of proof, denies the same. I feel that the testimony offered is irrelevant to the issue at hand." The state then continued presenting its case-in-chief. The state presented one additional witness, then rested.

Defendant's attorney filed a motion for judgment of acquittal at the close of the state's case. It was denied. Defendant's attorney made an opening statement, then presented evidence. Four witnesses, including defendant, were called and testified. Ms. Lederle was not called as a witness during defendant's case.

The first part of defendant's point asserts error by the trial court "refusing to allow Toni Lederle to testify. . . ." This court's review of the record does not disclose that Ms. Lederle's testimony was tendered. The only reference to Ms. Lederle is the inquiry that was preceded by defendant's attorney's statement to the trial court, "Your Honor, this is an offer of proof in the case of State v. Hemby, . . . ." Defendant's attorney asserted:

> In that, the defense feels that the exclusion of . . . Ms. Lederle's testimony and consideration by the jury would deprive the Defendant of his due process rights, in that we feel that the testimony relates to conduct of [Dennis Stewart], specifically in point with the defense's claim that [Mr. Stewart], . . . has propensities for anger and/or aggressiveness to which the defense position is that the Defendant was responding to those aggressive tendencies.

"[T]he usual way of presenting oral testimony is to call the witness to the stand and ask him [or her] questions." 1 McCormick on Evidence § 51 at p. 195 (4th ed.1992). The admissibility of tendered evidence is decided by the judge sustaining or overruling objections to the testimony. *Id.* If an objection to testimony is sustained, "the proponent of the question should ordinarily make 'an offer of proof.'" *Id.* *"When an objection is sustained to proffered evidence,* the party offering the evidence must show its materiality and relevancy by way of an offer of proof in order to preserve the matter for appellate review." *State v. Clay,* 763 S.W.2d 265, 270 (Mo.App.1988)(emphasis added). This court's scrutiny of the record on appeal fails to disclose a proffer of evidence to which an objection was sustained. Arguably, there is nothing for appellate review.

This court, nevertheless, has considered defendant's arguments that he should have been permitted to present testimony of Ms. Lederle concerning the matters addressed in the "offer of proof" as a response to Mrs. Stewart's testimony or to show that Mr. Stewart had a "habit" of

responding to trespassers with violence. Those arguments are without merit.[2]

■ Defendant argues that Mrs. Stewart's testimony concerning her husband's nature opened the door for him to show Mr. Stewart was inclined to react violently to trespassers. Defendant relies on the principle that if a party introduces evidence on direct examination or volunteers it on cross-examination concerning that person's lack of violent propensities, the other party may rebut the proposition by otherwise inadmissible evidence. *See State v. Hamilton*, 892 S.W.2d 371, 379 (Mo.App.1995). The fallacy of defendant's claim is that it was his attorney who, during cross-examination of Mrs. Stewart, elicited the characterization of Mr. Stewart. The state did not introduce evidence that Mr. Stewart was a non-violent person, nor did a witness volunteer such an assessment during the state's cross-examination. The testimony of Mrs. Stewart was given in response to a question posed by defendant's attorney. It was responsive to the question defendant's attorney asked. It was not evidence elicited by the state or evidence a state's witness volunteered.

The principle on which defendant relies in asserting that Ms. Lederle's testimony would have been proper is the curative admissibility doctrine. *State v. Middleton*, 998 S.W.2d 520 (Mo. banc 1999), *cert. denied*, 528 U.S. 1167, 120 S.Ct. 1189, 145 L.Ed.2d 1094 (2000), explains:

The "curative admissibility doctrine" applies after one party introduces inadmissible evidence. *State v. Shurn*, 866 S.W.2d 447, 458 (Mo. banc 1993). In that situation, the opposing party may introduce otherwise inadmissible evidence of its own to rebut or explain inferences raised by the first party's evidence. *Id. State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc 1987).

998 S.W.2d at 528. The state did not introduce or elicit inadmissible evidence.

■ Defendant further argues that the testimony of Ms. Lederle would have shown Mr. Stewart had a habit of threatening violence to persons who trespassed on his property. Defendant cites a South Carolina case, *State v. Brown*, 344 S.C. 70, 543 S.E.2d 552 (2001), and a Texas case, *Anderson v. State*, 15 S.W.3d 177 (Tex. App.—Texarkana 2000), in support of his claim that the testimony would have been admissible. Both cases relate to provisions of the Federal Rules of Evidence as adopted in those states. Missouri has not adopted the federal rules.[3] Further, the statements by the witnesses in those cases involved information gleaned from general observations over extended periods of time, not information based on a witness' observation of two incidents. In *Brown*, a wife stated she knew the moods of her husband; that when he became angry and agitated, he got violent. 543 S.E.2d at 554. In *Anderson*, a husband of 54 years was permitted to testify that his wife's habit or routine was to not admit a person to their house "unless it was a friend." 15 S.W.3d at 182. This court does not find *Brown* or

---

2. Defendant concedes in his appellant's brief that he could not rely on a showing that Mr. Stewart had a reputation for violence as part of defendant's self-defense claim in that there was no evidence defendant knew of any such reputation. *See State v. Johns*, 34 S.W.3d 93, 111 (Mo. banc 2000), *cert. denied*, 532 U.S. 1012, 121 S.Ct. 1745, 149 L.Ed.2d 668 (2001); *State v. Clark*, 747 S.W.2d 197, 200 (Mo.App.1988).

3. A reference to the Federal Rules of Evidence relative to "habit" appears in *Hawkins v. Whittenberg*, 587 S.W.2d 358, 364 n. 2 (Mo.App.1979). That case discusses "rare occasions" when "Missouri courts have dealt with the general topic of the admissibility of evidence pertaining to a habit of a person." *Id.* at 363.

*Anderson* persuasive. Defendant's point on appeal is denied. The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.