Opinion issued July 19, 2007 

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01147-CR






CHON KI YI, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1034911






MEMORANDUM OPINION

 A jury found appellant, Chon Ki Yi, guilty of murder and assessed punishment
at 80 years' confinement. In five points of error, appellant contends (1) the trial court
erred in publishing his custodial statement to the jury, (2) appellant received
ineffective assistance of counsel because his attorney did not object to the admission
of appellant's custodial statement, (3) the trial court erred in admitting a 911 tape
because its prejudicial effect outweighed its probative value, (4) the trial court erred
in admitting photographs of the murder scene because their prejudicial effect
outweighed their probative value, and (5) the trial court erred in admitting an autopsy
photograph because its prejudicial effect outweighed its probative value. We affirm.

BACKGROUND

 Appellant and the complainant, Katherine Yi, were divorced in September
2004. Although appellant continued to live in the family home with the complainant
and their two sons, he and Katherine slept in separate bedrooms.

 On July 22, 2005, 11-year-old Johnny and nine-year-old Jeff were at home
playing video games. Appellant was working on his computer, and Katherine was
upstairs in her bedroom. Johnny saw appellant go upstairs. After awhile, appellant
came back downstairs and said he was going to the store for cigarettes.

 About 30 minutes after appellant left, the boys went upstairs to check on their
mother, but the door to her bedroom was locked. After repeatedly knocking on her
door, they used a paper clip to pick the lock. The light in Katherine's closet was on,
but the door was shut. When they opened the closet, the boys found Katherine on the
floor in a large pool of blood.

 Johnny called 911, and the operator told the boys to go outside. Once outside,
they walked down the street to a friend's house. Their neighbor, Christina Nghiem,
brought the boys inside, took the telephone from Johnny, and began talking to the 911
operator. At the operator's request, Christina went back to the Yi's house to check
on Katherine. She found Katherine in the upstairs closet and determined that she had
no pulse. It was later determined that she had been stabbed approximately 88 times
with a pair of scissors.

 After police officers talked with Johnny and Jeff, they obtained a warrant for
appellant's arrest. R. Wedgeworth, a homicide detective for the Harris County
Sheriff's Department, soon located appellant in San Antonio, where he had checked
into a hotel and attempted suicide. One of the doctors at the hospital where appellant
was taken recognized appellant and knew that he was wanted for Katherine's murder. 
Once released from the hospital, appellant was taken to the police station in San
Antonio, where he was questioned by Wedgeworth. After Wedgeworth advised
appellant of his statutory rights, appellant gave a videotaped statement in which he
admitted that he stabbed Katherine with a pair of scissors. Wedgeworth noted that
appellant had cuts on his hands at the time.


ADMISSION OF VIDEOTAPED STATEMENT

 In point of error one, appellant contends the trial court erred by allowing the
jury to hear the videotaped statement he gave to Wedgeworth at the San Antonio
police station. Specifically, appellant contends that his voice was inaudible at times
and that Wedgeworth's statements repeating what appellant had said were hearsay. 
We review the trial court's ruling on the admission of evidence for an abuse of
discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We
must uphold the trial court's ruling if it is within the zone of reasonable disagreement. 
Id.

 Although appellant is soft spoken on the videotape, he can be clearly heard
admitting to the murder in his own words. Wedgeworth asked appellant why he
attempted suicide, appellant responded, "I gotta die." Wedgeworth asked if this was
because of appellant's wife, and appellant responded, "Yeah." Wedgeworth asked
appellant what made him so mad, and appellant responded that he and Katherine had
fought over her involvement with someone else and she had reminded appellant that
they were divorced. Appellant said Katherine told him, "If you want to kill me, kill
me. You are out of my mind." After determining the cause of appellant's anger,
Wedgeworth stated, "Now you stabbed her, what did you stab her with." Appellant's
response--"scissors"--can be heard very clearly on the tape.

 Thus, appellant, in his own words--not the words of Wedgeworth--admitted
killing Katherine with scissors. As such, the trial court did not err in overruling
appellant's hearsay objection.

 We overrule point of error one. INEFFECTIVE ASSISTANCE OF COUNSEL

 In point of error two, appellant contends he received ineffective assistance of
counsel because trial counsel did not object to the admission of his videotaped
statement, but, instead, affirmatively stated that he had "no objection."

 To show ineffective assistance of counsel, a defendant must demonstrate both
(1) that his counsel's performance fell below an objective standard of reasonableness;
and (2) that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); 
Andrews v. State, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005). A defendant has
the burden to establish both of these prongs by a preponderance of the evidence, and
a failure to make either showing defeats his ineffectiveness claim. Mitchell v. State,
68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We presume that counsel's conduct
falls within the wide range of reasonable professional assistance, and we will find
counsel's performance deficient only if the conduct is so outrageous that no
competent attorney would have engaged in it. Andrews, 159 S.W.3d at 101. We
cannot speculate beyond the record provided, so any allegation of ineffectiveness
must be firmly founded in the record, and the record affirmatively must demonstrate
the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).

 Appellant fails to meet the second prong of Strickland by failing to show a
reasonable probability that, but for the admission of the videotaped statement, the
result of the case would have been different. In this case, both boys testified that
appellant went upstairs where Katherine was shortly before the murder. He left a
short time later with his hands in his pockets, saying that he was going out for
cigarettes. The boys soon discovered their mother's body, which was covered with
stab wounds. Appellant never returned from going to buy cigarettes, but was
discovered approximately a week later after having attempted suicide in a San
Antonio hotel room. Appellant's hands had several cuts on them when he was
arrested.

 Appellant does not state the basis for an objection to the admission of the
videotaped statement beyond contending that the statements made by the police
officer repeating appellant's inaudible responses were hearsay. Appellant, however,
gave some audible responses on the videotape, including acknowledging that his wife
told him "If you want to kill me, kill me. You are out of my mind." And, in
response to a question asking what he had stabbed the complainant with, appellant
answered "scissors." Because there was ample evidence, in addition to the inaudible
portions of the videotaped statement, to support the jury's finding that appellant
murdered Katherine, appellant cannot show that, had counsel timely objected to the
officer's statements, the result of the case would have been different. See Ex parte
White, 160 S.W.3d 46, 53-54 (Tex. Crim. App. 2004) (holding that second prong of
Strickland not met when there was "ample evidence," in addition to challenged
testimony, that defendant committed murder).

 Appellant has thus failed to meet the second prong of the Strickland test. See
Herron v. State, 86 S.W.3d 621, 634 (Tex. Crim. App. 2002). (1)

 Accordingly, we overrule point of error two.

RULE 403 OBJECTIONS

 In point of error three, appellant contends the trial court erred in admitting the
911 tape. In point of error four, appellant contends that the trial court erred by
admitting several photographs of the crime scene. In point of error five, appellant
contends the trial court erred in admitting an autopsy photograph. Specifically,
appellant contends that the 911 tape and the photographs were unduly prejudicial
under rule 403, which provides:

 Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence.


Tex. R. Evid. 403.


Standard of Review


 In reviewing the trial court's determination of the probative and prejudicial
value of evidence under rule 403, we will reverse the trial court only upon a showing
of a clear abuse of discretion. Rachal v. State, 917 S.W.2d 799, 808 (Tex. Crim. App.
1996). But, reviewing for abuse of discretion in this context requires more than
deciding that the trial judge did in fact conduct the required balancing between
probative and prejudicial values; the trial court's determination must be reasonable
in view of all relevant facts. Id. Accordingly, if the record reveals that the probative
value of the tendered evidence is substantially outweighed by unfair prejudice, then
the trial court acted irrationally in admitting it and abused its discretion. Id.

911 Tape

 Appellant argues that the 911 tape was unduly prejudicial and had the jurors
in tears because the jurors could hear "Johnny's voice and experience first hand the
terror, grief, trauma, and tears of the eleven-year-old boy, as he discovers his mother's
blood soaked body." Also audible were Jeff's tearful prayers.

 However, 911 tapes are generally admissible, even if not necessary to establish
a material fact, because they provide a framework within which the State's evidence
may be developed. Webb v. State, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988)
(holding 911 tape admissible over rule 403 objection, even though not establishing
material facts, because tape provides framework for developing evidence); Sierra v.
State, 157 S.W.3d 52, 63 (Tex. App.--Fort Worth 2004, aff'd, 218 S.W.3d 85 (Tex.
Crim. App. 2007) (911 tape admissible over rule 403 objection); Munoz v. State, 932
S.W.2d 242, 244 (Tex. App.--Texarkana 1996, no pet.) (same); Brooks v. State, 833
S.W.2d 302, 304 (Tex. App.--Fort Worth 1992, pet. ref'd) (same).

 In Anderson v. State, 15 S.W.3d 177, 186 (Tex. App.--Texarkana 2000, no
pet.), the complainant's husband made a 911 call after his wife was murdered. The
defense sought to exclude the 911 tape on the basis of its prejudicial nature under rule
403. Id. The court held that the tape was admissible because it covered the period
immediately after the murder and contained evidence from an eyewitness who
identified the killer. Id. There was nothing in the tape to "cause the jury to act on any
basis other than consideration of the evidence presented to them." Id.

 Similarly, the 911 tape in this case was made immediately after the boys
discovered Katherine's body and verifies their testimony in many respects. The tape
does not unfairly implicate appellant at all--he is not even mentioned on the tape. The
tape, while dramatic, is relevant because it provides a "framework" for the State's
evidence, and its relevance is not "substantially outweighed" by the danger of unfair
prejudice toward the defendant. Accordingly, the trial court did not abuse its
discretion in admitting the 911 tape over appellant's 403 objection.

 We overrule point of error three.

Crime Scene Photographs

 Appellant argues that several crime scene photographs, which depict
Katherine's body lying in the closet from different perspectives and distances, were
unduly prejudicial. Appellant argues that exhibits 28 and 30 were "particularly
gruesome" because they were close-up photographs.

 Several factors may be considered in determining whether the danger of unfair
prejudice substantially outweighs the probative value of photographs, including the
number of photographs offered, their detail and size, whether they are black and white
or color, whether they are close up, the availability of other means of proof, and the
circumstances unique to each individual case. Sonnier v. State, 913 S.W.2d 511, 518
(Tex. Crim. App. 1995). Ultimately the admissibility of the challenged photograph
is within the sound discretion of the trial court. Hayes v. State, 85 S.W.3d 809, 815
(Tex. Crim. App. 2002); Sonnier, 913 S.W.2d at 519. Photographs are generally
admissible if verbal testimony concerning the subject matter of the photograph is
admissible. Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

 The photographs in this case are gruesome. They depict Katherine's body lying
on the floor of her closet in a pool of blood or the bloody area around the closet. 
Exhibits 28 and 30 are taken from the chest up on Katherine's body and show the stab
wounds to her neck from both a front and rear view. 

 In regard to a 403 analysis of gruesome photographs, the Court of Criminal
Appeals has stated:

 The photographs are gruesome in that they depict disagreeable realities,
but they depict nothing more than the reality of the brutal crime
committed. And it is precisely because they depict the reality of this
offense that they are powerful visual evidence, probative of various
aspect of the State's case.


Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). Accordingly, the
court in Chamberlain found a closeup of the victim's face with brain matter exposed
through a large wound on the side of the head to be more probative than prejudicial. 
Id. at 236-37.

 As in Chamberlain, the photographs in this case depict nothing more than the
reality of the gruesome crime itself. As such, their probative value is not substantially
outweighed by unfair prejudice and the trial judge did not abuse her discretion in
admitting the crime scene photographs.

 We overrule point of error four.

Autopsy Photograph

 Appellant also argues that State's exhibit 67, which depicts Katherine's brain
after the skull cap had been removed, was unduly prejudicial and should not have been
admitted. Autopsy photographs are generally admissible unless they depict mutilation
caused by the autopsy itself. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.
2001). When photographs depict internal organs that have been removed to portray
the extent of the injury to the organs themselves, the photographs are not considered
to be depictions of mutilation of the victim by autopsy. Id. at 151-52. Furthermore,
photographs depicting mutilation by the medical examiner may be admissible when
the photographs show bruising or other damage that is attributable to the defendant's
actions but is not visible externally, thereby making the photographs highly relevant
to the manner of death. See Ripkowski v. State, 61 S.W.3d 378, 392-93 (Tex. Crim.
App. 2001). Alterations caused by the autopsy are "of minor significance if the
disturbing nature of the photograph is primarily due to the injuries caused by the
appellant." Hayes v. State, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002). Overall, the
photograph must be helpful to the jury: "If there are elements of a photograph that are
genuinely helpful to the jury in making its decision, the photograph is inadmissible
only if the emotional and prejudicial aspects substantially outweigh the helpful
aspects." Erazo v. State, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004).

 At issue in this case is one autopsy photograph, which shows Katherine's brain
after the top of her skull had been removed. As part of its case, the State had to prove
that Katherine was killed by stab wounds caused by scissors. The medical examiner
testified that one of the stab wounds penetrated the skull and into the brain and, by
itself, was fatal. Clearly visible in Exhibit 67 is the injury to Katherine's brain caused
by the stab wound that penetrated her skull. 

 The wound to the brain would not be visible had the skull been left intact. The
photograph is quite clinical in nature. The disturbing aspect of the photograph comes
from the amount of damage inflicted by the scissors, not the alterations to the body by
the autopsy. See Hayes, 85 S.W.3d at 816. Furthermore, the photograph showed
damage to the brain caused by appellant's action that was not otherwise apparent. See

Ripkowski, 61 S.W.3d at 392-93.

 Accordingly, we hold that the trial court did not abuse its discretion by
overruling appellant's objections to the admission of the autopsy photograph.

 We overrule point of error five.


CONCLUSION

 We affirm the judgment.


 

 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. ' 
 
 
 -- '