82,493-01

TEXAS COURT OF CRIMINAL APPEALS                DEC.30,2014
CLERK OF THE COURT
MR.ABEL ACOSTA
PO BOX 12308
AUSTIN,TX 78711

RE: Courtesy Copy of Applicant's objections to the State's Answer
that he did not receive prior to the previous filing. WR-82,493-01.
EX PARTE JOSEPH DALE MOSS.


Dear Mr. Acosta,

     Please find enclosed Applicant's Objections to the State's
Answer in the above numbered cause.
     This courtesy copy is being provided for the purpose of
alerting the Court of Criminal Appeals that the above documents
have been filed in the Randall County District Clerk's office.
The Clerk will be forwarding the same I am sure shortly.
     If there are any questions or concerns, please do not hesitate
to contact me. Tank you for your kind assistance in this matter.

                                   Sincerely, Joseph Dale Moss

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 1 4 2015

Abel Acosta, Clerk

                                   Joseph Dale Moss
                                   1794546
                                   2101 FM 369 N
                                   Iowa Park, Tx 78367
                                   Allred Unit

1

CAUSE NO.W-21941-C-1
C.C.A.WRIT NO.WR,493-01

EX PARTE                          §          IN THE DISTRICT COURT

VS.                               §          RANDALL COUNTY, TEXAS

JOSEPH DALE MOSS                   §          251st JUDICIAL DISTRICT


APPLICANT'S RESPONSE AND OBJECTIONS TO THE STATE'S
ANSWER FOR WRIT OF HABEAS CORPUS


NOW COMES JOSEPH DALE MOSS,HEREAFTER APPLICANT, in the above numbered and styled cause and respectfully Responds and Objects to the State's Answer in these habeas proceedings. Applicant would show the Honorable Court the following in support of the same:

I.

TIMELINESS

Applicant objected to the Trial Court's Art.11.07 Sec.3(c) denial as soon as he received from the trial Court Clerk notice that the writ application had been forwarded to the Court of Criminal Appeals on November 26,2014. Those objections were made without ever receiving the state's Answer or Trial Court findings. Applicant prepared and mailed those objections out on December 4,2014 dated December 5,2014 because the mail pickup would not be until the morning of the 5th. Applicant received the State's Answer on the afternoon of the 4th. The State's Answer was file stamped on November 26,2014, the same day that the writ application was transferred to the C.C.A. Applicant did complain and request the Clerk properly forward the filings according to the rule at that time, but has yet to hear from the Clerk or recive anything other than the letter noticing the C.C.A. was sent the writ application.

The Memorandum in Support of the writ application at p.ii in Paragraph IV, as well as the Motion to Recuse, as evidenced in the letter to the Clerk upon filing of the writ and motion to recuse or Att.-A to the Objections to the Trial Court's Sec.3(c) general denial, shows that the motion to recuse was timely filed and properly requested to be presented to the judge within three days as well. The contested Trial Court Judge was legally barred from preforming any duties,...

1

other than ministerial, while under the legally filed motion to re-cuse. The State make no mention of the motion to recuse in their response. The State was also properly notified of the Motion to recuse. The State's requesting and presenting of two affidavits from the contested attorneys does not constitute proper adjudication of the merit of Applicant's claims, by the Trial Court, according to Art.11.07 Sec.3(c). However, what the State's actions do indicate is that there are previously unresolved facts material to Applicant's confinement that require further record developement. Applicant objects to the State's interpretation of the evidence in the record being sufficient for the Court to rule on the relief sought.(P.13) of their Answer. The Court of Appeals and the State on direct Appeal both were in agreement that this record needed to be developed in order to adjudicate the merit of Applicant's claim of ineffective assistance of counsel there.

Applicant also objects to the State's entering of Attorney Ray's affidavit that is perjurious on several points provable by the record, that Applicant will discuss below, as well as claiming to have contacted Applicant's Father and making absolutely false statements that Attorney Ray claims my Father made....which my Father denies and will testify to the same at an evidentiary hearing.

Because the State relies solely on the attorney's affidavit and his veracity, Applicant will direct his objections toward the affidavits specifically and in the order they appear there. It is an important consideration to respectfully remind the reader that Applicant's claims in this writ Application rise to the level of an actual conflict of interest concerning trial attorney Ray.

II.

LENDON RAY'S AFFIDAVIT:GROUND ONE

(x-3) and Attorney Ray's statements prove Applicant tried to have Ray contact Rick and Shayna Armijo, the Complainant's ex-husband and daughter, and subpoena them for trial. The affidavit shows he never did. Mr.Ray, to cover for this failure, makes up a completely false scenario to try to explain his lack of investigation. Applicant wanted these two people subpoenaed in order to be able to show the Complainant's habit and routein lifestyle of fighting with spouses, obviously having make up sex and carrying on in that

2

relationship for years. T.R.E.406 allows introduction of evidence if the proponent can at least show that the person acted in a specific situation with specific conduct. Anderson V State 15 SW 3d 177, 183. Applicant wanted these people investigated and subpoenaed in order to show the complainant's habit, routein and custom and was just as much the cause of the fight and make up sex as Applicant ever was. This was not to intimidate her into not testifying. However, Applicant did believe that once she was aware of the fact they were going to be required to testify and tell the truth, she would realize that her character was going to be impeached, knowing she was lying about Applicant here, she would decide to tell the truth since she only really reported the physical altercation. Attorney Ray explained many times that her credibility was everything in this case and repeatedly asked me to provide him evidence on Teresa Shaw. He states the same at page 2 of his affidavit where he specifically says[or Teresa Shaw]. What possible other type of evidence was he asking me to provide him on Teresa Shaw. The exact defense Applicant describes here is the exact defense Applicant believed Ray was pursuing. Her unsavory and shady past was not the issue, the way she conducted her life in relationships was and our situation was just an extension of the way she liked to live. Both Rick and Shayna would have been required to testify that the complainant and Rick were in an abusive relationship that lasted years and Shayna was the child born out of it indicating many instances of fighting and make up sex. Raising damaging evidence against Shayna was the not my intention concerning the pedophile grandfather, the fact Teresa left her with the grandfather knowing he had molested her was my point while she ran off with another abusive man.

The result of Teresa Shaw and the State knowing no witnesses were subpoenaed was that the state portrayed her as a "polite" person(V:4 42), and the Complainant was allowed to tell the jury that this was"the first time she had ever been in this situation"(V:4 49), when there were readily available witnesses who could have truthfully impeached her whether they wanted to or not because there, as Applicant told the attorney, were victim advocate records available to prove Rick had damaged the Complainant's teeth and she never took advantage of it because she was to busy chasing drug

3

dealing boyfriends to get them fixed.

ROD BOWERS: Attorney Ray claims to have talked to Mr.Bower's, my boss at the Construction company and landlord during this incident. If he actually did, he could have easily found out that Mr.Bowers never had a "underaged receptionist" while I worked there. This can be proven up easily at the requested evidentiary hearing. Attorney Ray will also be able to explain why he did not call Rod after speaking to him and finding out, according to the affidavit at page 3, considering Mr.Bower's was home all night and neither heard or saw anything of the fight that supposedly lasted hours. This alone would have imppeached the complainant's version of the case, whether Mr.Bowers wanted to testify on my behalf or not.

SHERIFF RICHARDSON: Applicant had a very favorable relationship with the Sheriff and spoke to him many times and the Sheriff never mentioned talking to this attorney. Sheriff Richardson is the one who fired the head of the medical department for the handling of Applicant after the suicide attempt. Again the requested evidentiary hearing with bear this out and the true nature of the conversation, if in fact there was one.

BUTCH TESTERMAN: Attorney Ray requested funds for and investigator 6 weeks before trial after being appointed for 10 months. This request, as (x-8) shows that Attorney Ray admits only limited investigation at that point and understood there were a "number of witnesses that needed to be sought out and interviewed", yet Mr.Ray now only refers to the investigator concerning Mr.Testerman. Mr. Testerman was on the State's witness list and testified at trial. Attorney Ray claims Butch told him he had "seen Mr.Moss act aggresive toward Teresa on other occasions" and encouraged her to stop seeing him." The record does not support this calimed statement. It was the Complainant who testified this was our first fight(V4: 49). Interestingly, Applicant opines, that if Mr.Testerman freely offered this information to this attorney, surely the same was in the State's possession at trial, and the subject was not broached by them.

4

LYNDON MOSS: Upon receipt of this State's Answer, and reading the paragraph on page 4, where Mr.Ray states he contacted my father, Lyndon Moss, I contacted my father and read him the statements made therein by Mr.Ray. My father, who faithfully supports me then and now, absolutely denied ever speaking to the attorney, other than maybe on trial day briefly. My fathter specifically stated he did not make the remarks concerning Teresa being a good woman, he never liked her, and he never stated he supported her in this matter. This is aggravated perjury and a continued bias resulting from the conflict of interest that started when Applicant refused the plea bargain offer for 12 years in prison and culminated in the presentation of the false defense at trial, elicitation of extraneous offenses during guilt and innocence(V4: 194-209), and Applicnat's attempted suicide which led to his return to court shackled and cuffed and seperated from the attorney accross the courtroom.
My father has expressly told me that he will be very willing to take the stand under oath and testify that he absolutely never said any of what Mr.Ray claims he said. Mr.Ray attempts to make Applicant look like a child molester, concerning the"underage receptionist" and now would have the Court believe that my father actually supported Teresa in this matter. Attorney Ray attempts to drive this home in his Summary at page 13 where he states no one would support my version of the case,"not even his father." For these lies, Applicant will immediately file a State Bar Grievance for the aggravated perjury concerning the false claimed statements from my father, with his support and take every single measure to pursue the legal avenues available to correct this type of vindictive attitude from the attorney. It is only because of time restraints that Applicant has chosen to rely on the requested evidentiary hearing as opposed to an affidavit from his father,which in in the works as we speak,and will be presented as it becomes available. The requested evidentiary hearing will allow the Trial Court to make the proper credibility determination under the crucible of cross-examination of Applicant, Applicant's Father, and this attorney, respectfully.

In conclusion at page 5 Attorney Ray make a conclusory statement the"Joe's list of potential witnesses " were detrimental or

their testimony was inadmissable. Mr.Ray cannot claim to have made
a reasonable strategic choice about Rick and Shayna's testimony
when it is very clear he never investigated them. The notes and let-
ters were in my possession and shown to him at every visit as well
as the letters, and more, sent to him. However, and very important
this entire claim, Mr.Ray clearly admits that it was his theory that
he alone presented.Page 6 of Aff. Also at page 13 of the aff. he
clearly admits he presented his own defense."Rather than present
Joe's defense." Applicant has the right to present his own defense
and made this clear many times to the attorney as the attorney adm-
its in this affidavit. The difference in his story and mine is the
fact that he led me to believe that my version of the case would be
a viable defense and would be presented, not a fabricated defense
based on jealousy that the record bears out was totally false.

### GROUND TWO : PLEA NEGOATIONS

Applicant didn't "run off" his previous attorney. Applicant
did file a state bar grievance on the attorney for his performance
or the lack thereof. This is surfeit information used for no other
reason than to display the attorney's attitude toward Applicant and
has no probative value to this response other than to further prove
this attorney's lack of professionalism. Applicant did file a State
Bar Grievnace against attorney Ray but nor for the reasons he falsely
state in this affidavit. Applicant filed the State Bar Grievance be-
cause after Mr.Ray's appointment he failed to contact me for 6 mon-
ths. Again the requested evidentiary hearing will allow Applicant
the time to obtain this grievance and easily prove this attorney's
false statements. That request is in the mail as I write today.

The affidavit of attorney Ray does more to prove his own ine-
ffectiveness than to dispell it. His only defense to the erroneous
advice concerning penalty rage defects in (x-6),not(x-4) as the att-
orney states om page 8, is that the document is "incomplete." The
reason it's"incomplete" is the fact that the attorney failed to ever
do any meaningful investigation in this case, including while he
was advising me to plead guilty "at the begining of the case", acc-
ording to his own affidavit at page 8. As his affidavit shows, his
advice to plead was not based on specific facts of this case, which
based on well known case authority from the Court of Criminal App-

6

eals, would render him ineffective thereby. This attorney should not be allowed to attempt to cure his own ineffectiveness by simply saying this all important plea bargain refusal documnet is simply incomplete. The penalty range evidence is a major concern for any defendant who decides to take his case to trial, as argued in Applicant's writ. Secondly this attorney cannot be presumed to have made a strategic decision about witnesses he has completely failed to investigate or interview. It follows that the strength of the State's case cannot be properly discerned without investigating it. Relying on th eState's file or interpretation of the evidence is clearly all that this attorney was doing when he offered this plea. This is easily shown by(x-8) where he readily admits,10 months into his representation and only 6 weeks prior to trial, that he only had performed "limited investigation" and understood the need to seek out and interview a "number of witnesses" in order that Applicant "receive his right to effective assistance of counsel."(emphasis added). The (x-6)rejection clearly shows that this offer was made only one time and "withdrawn" and no other offers would be made. If this attorney's affidavit is true, that offer was made at the beginning of the representation, not on the eve of trial, as he attempts to play both sides of the field. The evidence(x-6)shows this was not a running offer, Applicant absolutely objects to this attorney's ability to enter this ambiguous affidavit and the State's entering it in such a manner without consideration of that fact. The State's file, because the attorney's file contained this offer and facts concerning withdrawal, the origin of (x-6), should hold the necessary information upon which to judge the truthfullness of the attorney in this instance.The fact remains, the evidence supports the calim that this penalty range advice was erroneous and the advice to plead guilty was made prior to any real investigation in the case. Remembering it is Applicant's claim that refusing to plead guilty is what initiated the conflict of interest, this claim effects the entire writ application, not just the plea bargain process. These errors have a cumulative effect on this attorney client relationship that resulted in a conflict of interest. In that manner, this plea bargain process and evidence can be considered cumulatively, if it rises to the level of error at all. See GROUND TEN.

7

## GROUND THREE: INCOMPETENCE AT TRIAL

Attorney Ray claims that Applicant "consistently attempted to derail the trial process from the beginning of my appointment." Again this is false. Attorney Ray claims two grievances were filed against him. He is correct. The initial grievance was filed, as stated earlier, because he failed to even contact me in the first 6 months of his representation. The second grievance was filed after my conviction based on his action at trial. Both have been requested and will be provided immediately upon receipt. The record is full of Applicant's mention of suicide, even before this false charge was filed. The State called the ex-parte note(x-5) a "suicide note" (V4: 130). The State inclosing arguments explained the whole case to be the result of Applicant's mental issues based on (x-2). Mr.Ray specifically states Applicant became"unnerved" at page 9 of his affidavit after Teresa Shaw started testifying. What exactly happened when Applicant realized she was going to be allowed to testify this was her first time in this situation(V4: 49) and made to look like she was more credible(V4:41) by the State, who was well aware of the need to bolster her credibility, and there were no witnesses or evidence dug up by this"attorney" to impeach her,ie, Rick and Shayna Armijo, or anyone else, Applicant began to be unnerved and because the attorney refused to speak to him outside of the jury's presence, as he demanded, the unnerving further developed into a hopeless dispair and an attempted suicide as opposed to proceeding to trial on the false defense of Attorney Ray(AFF. at 13). This unnerving began earlier when the attorney told the jury they would hear the Complainant testify that this case was about jealousy(V4:20-21). not about the taking of the unwanted photograph. The record reflects, based on the testimony of the Complainant, who the attorney never talked to prior to trial, that this defense of attorney Ray was false and easily defeated by the truth from the Complainant(V4: 40-41) among other cites as shown on page one of Applicant's Memorandum. This was a complete breakdown in the attornay client relationship and Applicant's ability to continue in this trial, a legal and actual conflict of interest. The attorney admits at page 9 of the affidavit that he completely relied on the "officer's testimony" and his "own observance of Joe" to

determin Applicant's competency. Attorney Ray never observed Applicant after he left the courtroom knowing Applicant wanted to talk to him about the false defense being presented, including after the attempted suicide. Applicant was held in a "padded cell". Any competent and loyal attorney would have made an effort to check on his client. And Attorney Ray only made a half-hearted request for continuance, but only after agreeing this was a voluntry absence (V4: 129-130). Attorney Ray's last statement on page 9 is absolutely true! He was not concerned with Applicant's competence to stand trial, even after admitting I was unnerved in his presence. It is a fact that Applicant returned the very next day, when some what coherent, and was chained and sat accross from the attorney with no present ability to confer with the attorney in any manner during the completion of the trial. There is not a scintilla of evidence to show Applicant indicated a desire to harm the attorney to mandate this action. Furthermore, this seperation deprived Applicant of the ability to know that the Attorney had elicited jail time extraneous offenses, the only reason Applicant did not testify in this trial, during his absence. This effectively denied Applicant the ability to testify at the trial upon his return(V5: 11).

The realization that the only defense Applicant had faith in proving his innocence at trial was just defeated by his own attorney and the State taking full advantage of it, was the cause of this nervous breakdown. When the attorney never showed up to speak to Applicant, Applicant lost all hope and tired to kill himself. Applicant wanted to testify and tell the judge what was going on, and ultimately did so(x-5), which went completely ignored and the attorney was allowed to present the defeated and false defense he alone decided would be presented, by his own admission.

## GROUNG SIX CONTINUANCE

It is appalling this this attorney attempts to pursuade this Honorable Court that he simply mis-spoke concerning his failure to properly request continuance. if this is allowed, adjudicating the merits of a claim based on the record has lost all meaning. The Code of Criminal Procedure and well known and setteled law establishes that the request for continuance be in writing. Reasonable professional conduct required the request for continuance at that point

9

of this trial. It is firmly grounded in the record, therefore necessary to raise it on appeal. The request, if properly made, would have likely been granted and the object to be gained is the reason the attorney requested it, in order to compell Applicant to attend his own trial. Applicant did return the very next day as soon as he was able. A one day continuance was not such a delay in this trial to prejudice it. The very fact this attornay elicited 8 matters of extraneous offenses while Applicant was not present demonstrates this attorney did not want Applicant at this trial, especially after his attempted suicide and notification to the trial court that he was presenting a false defense on Applicant's behalf. A short recess and continuance are legally and meaningfully different to such a degree this attorney's affidavit is appalling!

## GROUND SEVEN
## ELICITATION OF EXTRANEOUS OFFENSES

This ground seven and the State's introduction of this false and perjurious affidavit, given the availability of the record for both the attorney's and their review, prior to entry of this erroneous affidavit, amounts to no record developement of this ground at all, as prescribed by the Court of Appeals on direct review. This ground is sufficiently egregious to reverse this conviction standing on its own and also when it is considered in the totality of the case, a STRICKLAND REQUIREMENT, it not only demonstrates the ineffectiveness on the issue, it demonstrates Applicant's claim of an actual conflict of interest. Furthermore, it cannotes either intentional deception on behalf of attorney Ray or further"flying by the seat of his pants" as Applicant claimed in (x-5). Either way, this claim deserves proper record developement based on the well known and inherently prejudicial introduction of extraneous offense evidence during the guilt and innocence phase of a trial. The prejudicial effect, in this trial, entails that it was after the review by the attorney of (x-5) and after the Complainant, State and Attorney Ray were all told by the Trial Court Judge at (V4: 102)that "jail time" testimony would not only violate the Court's Motion in Lemine, filed by Attorney ray himself(X-10), but it would be "a mistake in this trial." This complained of multiple refrences to certain behavior that could be termed extraneous matters committed by Joe", as Attorney Ray calls them at page 10 of

10

his affidavit, absolutely occurred in front of the jury! Teresa Shaw never made refrence of jail time until after it was made perfectly clear to her and the State as well as Ray, not to do it at (V4: 102). All of this is proven by the record.

Mr.Ray at page 11 of the affidavit continues flying by the seat of his pants and without concern for the truth where he attempts to have this Honorable Court believe that the first instance of "jail time" evidence was "blurted out so quickly that I was unaware of the limine violation." Not only is this incredible given the discussion that had taken place at p.102 specifically about jail time evidence and his own motion in lemine, but because any reasonable attorney would notice it immediately considering he was the one pacing the questioning, and his understanding of extraneous offense evidence at trial has(X-10). he then tries to pursuade the Court that it was blurted out a second time right before lunch, and he admits or claims it happened to quickly for him to catch it. All eight of the instances Applicant complains about happen inbetween (V4: 194-209),INFRONT OF THE JURY. Mr.Ray, after the Trail Court Judge stops the line of questioning and calls it a "gratuitous" and more and more gratuitous offering", indicating at least three incidents, claims in his affidavit at page 11, that he then made a strategic decision not to object after the jury returned from lunch. Any first year attorney knows that the proper time to make an objection is at the time it happens in order to give the judge the earliest opportunity to correct or give currative instructions. These were not "vague allegations" of misconduct. this was an intended introduction of extraneous offense evidence, out of Applicant's presence, in order to bolster the State's case and attack Applicant' character by the Complainant in a he said she said case that Attorney Ray admits comes down to who the jury will believe in this affidavit while explaining why he advised Applicant not to testify based on Applicant's past criminal record.(P.7x2,8,12 x2). There would have been no better time to attack the complainant's version of the case and show the retribution he claims at page 5 of the affidaivt than at the time she intentionally violated the motion in lemine. The judge had already told everone that the objection would be sustained at(V4:102). It would have been! This mistake, under the circumstances may well have resulted in mistrial

11

currative instructions would have been given. This would have cast the Complainant in a bad light, the attorney's claimed trial strategy at page 5 based on retribution. His affidavit doesn't support his own defense strategy and it is completely erroneous and usless as it goes to record developement on this issue because of his "misinterpretation of the record." This is gross ineffective assistance of counsel. Applicant requests the ability to cross-examine this att- on the record concerning his claims in this affidavit.

## GROUNDS FOUR,FIVE, EIGHT AND NINE

The State,in their Answer at page 7,states that Applicant "provides no explanation why he was prevented from raising these claim on Direct Appeal", while employing a procedural bar. These claims are raised "throught the appellate window" in Ground twelve of the writ.. In fact Ground Four on incompetence is specifically argued in Ground 12 of the Application and referrs to the need to raise the judge's failure to make an informal inquiry as an ineffective ass.of counsel against the appellate attorney. It is preserved and meritorious as argued based on TCCP Art. 46B.001. Applicant conceeds that Ground Five concerning the judge's failure to grant continuance is not properly preserved. However, the claim is substantially raised as ineffective assistance of counsel for the failure to proper request continuance, respectfully. This issue is also raised as ineffectiveness of appellate counsel at ground thirteen because it is firmly grounded in the record.

Both Grounds Eight and nine are framed as Constitutional Violations concerning judicial bias and cognizable on habeas for the first time.

Ground Eight is proven in great part by Attorney Ray at page 13 of his affidavit. Mr.Ray confirms that the defense he presented was his own and not Applicant's. Judge Estevez considered ex-parte communications from Applicant(x-5) specifically informing her of the attorney's false defense. Judge Estevez biasedly ignored the complaint and proceeded in the trial knowing of the false defense and conflict of interest. The continued trial quickly included the jail time evidence, in front of the jury, that she had rejected at (V4: 102)(V4: 194-209). Yet she allowed it a number of times before stopping the trial. this was bias fueled by Applicant's ex-parte

12

communication no doubt. Because Judge Estevez failed to comply with T.R.CP.18(a) and allowed the writ to be transferred before she took the step that is ministerial, ie forwarding the motion to recuse to the Presiding Judge, constituting a Sec. 3(c) denial, of which Applicant objected, that Sec.3(c) denial is void, respectfully. Applicant has since received Att.-A to this Objection from the Judge and Presiding Judge respectfully. The dates of the letters prove beyond doubt that Judge Estevez failed to properly perform her ministerial duties and improperly adjudicated this writ application thereby. The writ was forwarded to the CCA on Novenber 26,2014. The Judge refused to recuse and was upheld by the Presiding Judge on December 4, 2014. this is further evidence of Judicial Bias and refusal to follow specific and legal mandates, just as she ignored T.C.C.P.46B.001 in the instance of incompetence. Applicant will appeal the Presiding judge's ruling to the Court of Appeals instantly based on the fact that the grounds for recusal were not based on in court rulings. There was no ruling on incompetence. Ignoring the competence issue when the Code Of Criminal Procedural requires at least an informal inquiry is the issue. Applicant does not take his actions against a District Judge lightly, however, the issue connects itself to the overall case to the point of forcing Applicant to trial with unwanted counsel based on consideration of an ex-parte communication (x-5), knowing of the presentation of a false defense. Applicant was denied ex-parte communication while he was cuffed and held accross the courtroom after his return to Court by this Judge. That is evidence of a conflict of interest in and of its self, respectfully.

Applicant relies on Phillips V Woolford 267 F 3d at 988 in requesting that the Court of Criminal Appeals remand this case back to the trial court to be adjudicated by a new judge based on the facts set out in Phillips above."Absent proof of personal bias 3 factors determine whether a case should be remanded to a different judge; 1) Whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of hie/her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected;2)Whether reassignment is advisable to preserve the appearence of justice,and 3)whether reassignment would entail waste and duplication out of porportion to any gain in preserving the appearance of fairness ." id 1165 n5 of United States V Arnett 628 F 2d 1162,1165.

Applicant request remand and reassignment to a different judge because the necessary remand itself will require the judge to adjudicate this writ application after excepting ex-parte communication from Applicnat at trial that was offensive to her and the fact that this erroneous affidavit from the attorney must be rejected, from attorney Ray, more specifically. The fact the judge has already participated in the writ process, while under the motion to recuse, demonstrates, by her Sec.3(c)denial, that the trial Court relied on the erroneous affidavit. There has been no record developement on the issue of extraneous offense worthy of belief, based on the record.Respectfully. The appearance of bias is sufficient to warrant recusal.

## GROUND ELEVEN
### INEFFECTIVE ASSISTANCE OF BROOKS BARFIELD

Ground Eleven: Applicant simply advers that the ground was incompletely briefed based on the record containg 8 not 2 instances of elicitation of jail time evidence and that would have made the likelihood of reversal on appeal more probable.

GROUND TWELVE:The trial judge's complete refusal to follow T.C.C.P Art.46B.001 is firmly grounded in the record. It is a ministerial act and it was not performed. that means she did not even mention the competence of Applicant after he attempted suicide during trial.

GROUND THIRTEEN: It is a well known fact that an attorney muust formally request continuance by writing. Attorney Ray did not. It is incredible that the attorney's both attempt to pursuade this Honorable Court that this was simply a misstatement. Recess and Continuance have specific and meaningful applications. This request was for continuance not recess. Therefore, it was done in a manner not consistant with reasonable professional judgement or application. Attorney Barfield must make his determinations on the appeal based on the record. The trial attorney said continuance. It was not properly made and would have been granted if properly requested and it would have gained Applicant the one day necessary to return after attempting suicide and the opportunity to speak to this lawyer, which is what Applicant wanted in the first place,out of the jury's presence. This is ineffective assistance of counsel. Attorney ray did not want to speak to Applicant and this assured he would not and did not.

14

## INMATE DECLARATION

I do hereby swear under the penalty of perjury that the statements contained in the above and foregoing document are true to the best of my belief.

Joseph Dale Moss

## CERTIFICATE OF SERVICE

BY MY SIGNATURE AND ADDRESSES LISTED BELOW, I DO HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE AND FOREGOING DOCUMENT WAS SENT THIS THE 30TH DAY OF DECEMBER,2014, TO THE ADDRESSES LISTED BELOW BY THE TYPE OF MAIL INDICATED NEXT TO THE ADDRESSES.

JOSEPH DALE MOSS

Joseph Dale Moss
1794546
2101 FM 369 N
Iowa Park, TX 76367
Allred Unit

## CERTIFICATE OF COMPLIANCECERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with type face requirements of TEX.R.APP.PROC.9.4(e). And it is less than 15 pages in length.

District Attorney
Warren Clark
Justice BLDG,2309 Russell Long Blvd
Ste.120
Canyon, TX 79015(REG U.S.Mail)

Joseph Dale Moss
1794546
2101 FM 369 N
Iowa Park, TX 76367

District Clerk, Jo Carter
2309 Russell Long BLVD Suite 110
Canyon, TX 79015 (Certified return receipt requested)

Court of Criminal Appeals
P.O.BOX 12308
Austin, TX 78711 (Reg U.S.Mail)

ATTACHMENT-A

**Angela Johnson**

**Subject:** FW: #21,941-C STATE VS. JOSEPH DALE MOSS
**Attachments:** 2151_001.pdf

---

**From:** Angela Johnson
**Sent:** Thursday, December 04, 2014 10:11 AM
**To:** Judge Kelly Moore
**Subject:** #21,941-C STATE VS. JOSEPH DALE MOSS

Judge Moore,

    I have enclosed a copy of a motion to recuse filed by Joseph Dale Moss, Cause #21,941-C. I decline to recuse and I request that a judge be appointed to hear the recusal.

    Thank you,

    Ana E. Estevez
    251st District Judge

Cc: Randall County District Attorney

    Joseph Moss
    Allred Unit
    2101 FM 369 N
    Iowa Park, TX 76367

 **NINTH ADMINISTRATIVE JUDICIAL REGION**

**Kelly G. Moore**
Presiding Judge
kmoore@terrycounty.org

500 W. Main, Rm. 302W
Brownfield, Texas 79316

**Claudette Buske**
Administrative Assistant
cbuske1@aol.com

Phone (806)637-1329
Fax (806)637-8918

December 4, 2014

Jo Carter
District Clerk
2309 Russell Long Blvd., Suite 110
Canyon, Texas 79015

Re: Cause No. 21, 941-C in the 251st District Court of Randall County, Texas; *EX PARTE JOSEPH DALE MOSS*

Dear Clerk:

In regard to the above, I enclose an original ORDER DENYING MOTION TO RECUSE-SUMMARY DENIAL FOR NON-COMPLIANCE. Please file this among the papers in this case.

Sincerely,

ORIGINAL SIGNED BY
JUDGE KELLY G. MOORE

Kelly G. Moore
KGM:djm

cc:   Joseph Dale Moss
      Randall County District Attorney
      Hon. Ana Estevez



NO. 21,941-C

Ex Parte                         §        IN THE 251ˢᵗ DISTRICT COURT
                                 §
                                 §
                                 §        OF
                                 §
JOSEPH DALE MOSS                 §        RANDALL COUNTY, TEXAS

ORDER DENYING MOTION TO RECUSE-SUMMARY DENIAL FOR NON-COMPLIANCE

On this 4ᵗʰ day of December, 2014, the undersigned, in his capacity as Presiding Judge of the Ninth Administrative Judicial Region, considered the Motion to Recuse filed by Applicant herein.

The Motion was considered without hearing. The undersigned finds that the Motion fails to comply with the mandatory requirements of Rule 18a, Texas Rules of Civil Procedure and sets forth no factual allegations that would be admissible in evidence and that, if proven, would be sufficient to justify recusal. The court further finds that the motion is based solely on the judge's rulings in the case. *See* Rule 18a (a) (2), (3) and (4), TRCP.

It is ORDERED that the Applicant's Motion to Recuse is denied.


Dated: December 4, 2014                    _____
                                           Kelly G. Moore
                                           Presiding Judge of the Ninth Administrative
                                           Judicial Region