741 S.E.2d 521

**The STATE, Respondent,**

v.

**Thomas GILLILAND, Appellant.**

**Appellate Case No. 2011–185606.**

**No. 5053.**

Court of Appeals of South Carolina.

Heard Oct. 29, 2012.

Decided Nov. 28, 2012.

Rehearing Denied Jan. 25, 2013.

392

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie Kate Keeney, all of Columbia; and Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

CURETON, A.J.

Thomas E. Gilliland appeals his conviction for first-degree burglary. He argues the trial court erred in declining to direct a verdict of acquittal or, in the alternative, by refusing to give a jury charge on trespass as a lesser included offense of burglary. We affirm.

## FACTS

### I. Background

Gilliland and Pamela Morgan (Victim) met as co-workers. After they dated for a few months, Gilliland moved in with Victim. Following an incident in January 2010, Victim ended the relationship. Gilliland departed from the home, leaving his personal property behind. On February 16, 2010, the family court issued an order of protection forbidding Gilliland "to communicate or attempt to communicate with [Victim] in any way or to enter or attempt to enter [her] place of residence" for a period of six months.[1]

On March 15, 2010, Victim worked until 11:00 p.m. Arriving home at 12:10 a.m. on March 16, 2010, she unlocked her door, entered, and found Gilliland waiting for her inside. According to Victim, Gilliland told her he had come to talk and

---

1. The family court issued the order of protection pursuant to the Protection from Domestic Abuse Act (the Act), S.C.Code Ann. §§ 20–4–10 to –395 (1985 & Supp.2011).

make up with her; he loved her; and he, not the family court, knew what was best for her. When Victim asked how he had entered her home, Gilliland would only say, "I'm a cat burglar. Doors can be jimmied, windows can be opened." According to Victim, she did not run because she did not believe she could get away, and she did not tell him to leave because she believed he would not listen to her.

When Victim tried to leave by taking her dog for a walk, Gilliland followed closely behind her. Back inside the house, Victim tried to dial 911 from her two home phones, but they had been disconnected. After more than two hours of alternately sitting and walking from room to room while Gilliland talked, Victim succeeded in going into the bathroom alone, where she dialed 911 from her cell phone. Police officers arrived soon afterward, interviewed Gilliland and Victim separately, and arrested Gilliland. He was charged with violation of a protective order and first-degree burglary.

## II. Trial

At trial, Gilliland admitted to violating the protective order. However, he defended against the burglary charge by claiming he was present at the home with Victim's consent. According to Gilliland, Victim invited him to the home to collect his belongings and personally let him inside.

Deputy Ryan Flood recalled responding to Victim's domestic disturbance call at approximately 3:00 a.m. When Victim answered the deputy's knock at the back door, she quivered and appeared frightened. The officer interviewed Victim and Gilliland separately and took a statement from Victim. He recalled transcribing her account because she was shaking too much to write it herself. Next, Deputy Flood Mirandized and interviewed Gilliland, who explained he intended to reconcile with Victim and had entered the house through the bathroom window.[2] Gilliland did not mention any invitation to retrieve his belongings.

Victim also testified at trial. She recalled obtaining the order of protection but subsequently telephoning Gilliland's son. In that call, she offered to allow a member of Gilliland's

---

2. Victim also testified the latch to her bathroom window had been tampered with or broken.

family to retrieve his belongings from her home. However, the son handed the telephone to Gilliland, so Victim relayed the message to him. She denied inviting Gilliland to her home. Although no one ever collected his belongings, Gilliland continued to telephone Victim and send her love letters.

Gilliland testified in his defense. He acknowledged knowing the protective order barred him from contacting Victim, but he stated he "just loved her so much that [he] wanted to write her a letter." According to him, Victim telephoned his son several times in one day, asked for Gilliland, and invited him to come to her house "after she got off work" to pick up his belongings.

Gilliland recalled that, on the night of the incident, he walked eight miles to Victim's home, and Victim let him in. According to Gilliland, after Victim drank a glass of wine, the couple walked her dog, then went into the bedroom and made love. Gilliland stated he showered afterward, then Victim went into the bathroom on the pretense of showering and, while in the bathroom, called 911. He described Victim returning to the living room, kissing him, lighting a cigarette, and finishing her wine. Gilliland testified Victim asked if he would like to walk the dog with her again, and he said yes. However, when she opened the door and stepped outside, "the deputy was standing there."

Gilliland recollected waiting in the patrol car while the deputy talked with Victim, then explaining to the officer that Victim had let him into her house when he knocked on the door. According to Gilliland, he told the officer he had gone to the house to reconcile with Victim and retrieve his belongings.

When shown photographs of the damage to Victim's bathroom window, Gilliland denied causing it. On cross-examination, he noted he knew when Victim would be working and when she would likely return home. He admitted writing her several letters in April, May, June, July, August, September, and October 2010. He confirmed writing in another letter, dated just two weeks before the incident, that he understood the family court "think[s] they know how to protect you, but they don't. I must concentrate on what's good for us, and not what's right for the system." Although Gilliland claimed he

received one letter in return from Victim, he did not produce it.

At the close of the State's case, Gilliland moved for a directed verdict, arguing the State had failed to prove the elements of first-degree burglary. The trial court denied his motion. At the close of testimony, he renewed his motion, which the trial court again denied. In addition, anticipating the State intended to assert his violation of the protective order satisfied the "intent to commit a crime" element of first-degree burglary, Gilliland requested a jury instruction on trespass as a lesser included offense. The trial court also denied this motion.

The jury found Gilliland guilty of both offenses, and he received concurrent sentences totaling fifteen years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

■ In criminal cases, the appellate court sits to review errors of law only and is bound by the factual findings of the trial court unless clearly erroneous. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001).

## LAW/ANALYSIS

### I. Directed Verdict

Gilliland asserts the trial court erred in declining to direct a verdict of acquittal on the first-degree burglary charge when the only evidence supporting the element of intent to commit a crime was his violation of a protective order. We disagree.

■ A court interpreting a statute looks first to the statute's plain language:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature. All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute. Absent an ambiguity, the court will look to the plain meaning of the words used to determine their effect.

*State v. Whitner,* 399 S.C. 547, 552, 732 S.E.2d 861, 864 (2012) (citations and quotation marks omitted).

■ An appellate court reviews the denial of a directed verdict by viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State. *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, [an appellate court] must find the case was properly submitted to the jury." *Id.* at 292–93, 625 S.E.2d at 648. The trial court may not consider the weight of the evidence. *Id.* at 292, 625 S.E.2d at 648. However, "when the [circumstantial] evidence presented merely raises a suspicion of guilt," the trial court should direct a verdict in favor of the accused. *State v. Bostick,* 392 S.C. 134, 142, 708 S.E.2d 774, 778 (2011) (citing *State v. Cherry,* 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004)). A mere suspicion is a belief that is inspired by "facts or circumstances which do not amount to proof." *State v. Lollis,* 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001).

■ A person is guilty of first-degree burglary if he "enters a dwelling without consent and with intent to commit a crime in the dwelling" and either enters or remains in the dwelling during the nighttime. S.C.Code Ann. § 16–11–311(A) (2003). Although the intent to commit a crime must exist at the time the accused enters the dwelling, the jury may base its determination of that intent upon evidence of the accused's actions once inside the dwelling. *State v. Pinckney,* 339 S.C. 346, 349–50, 529 S.E.2d 526, 527–28 (2000). First-degree burglary is a felony punishable by imprisonment of a term between fifteen years and life. S.C.Code Ann. § 16–11–311(B) (2003).

■ Pursuant to section 16–25–20(D) of the South Carolina Code (Supp.2011):

> A person who violates the terms and conditions of an order of protection issued in this State under … [the Act] … is guilty of a misdemeanor and, upon conviction, must be imprisoned not more than thirty days and fined not more than five hundred dollars.

For the purposes of section 16–25–20(D), an order of protection is one that is "issued to protect the petitioner or minor household members from the abuse of another household member where the respondent has received notice of the

proceedings and has had an opportunity to be heard."
S.C.Code Ann. § 20–4–20(f) (Supp.2011).

We see no error. Our standard of review requires
that we view the evidence in the record in the light most
favorable to the State. *Weston,* 367 S.C. at 292, 625 S.E.2d at
648. In the case at bar, that evidence reflects Gilliland
entered Victim's home against her wishes at some point before
12:10 a.m. and remained there for nearly three nighttime
hours. Accordingly, the State established Gilliland (1) entered
Victim's dwelling (2) without her consent and (3) remained
there during the nighttime. *See* § 16–11–311(A) (setting forth
elements of first-degree burglary).

Thus, the issue on appeal centers on the accused's
intent to commit a crime within the dwelling, which the State
contends it established through Gilliland's violation of the
order of protection. *See id.; see also* § 16–25–20(D) (provid-
ing violation of a protective order issued under the Act is a
misdemeanor). The question whether the violation of such an
order is a crime sufficient to support first-degree burglary is
novel in South Carolina.

We find the plain language of sections 16–11–
311(A) and 16–25–20(D) is unambiguous. Accordingly, we
may not impose a different interpretation on that language.
*See Whitner,* 399 S.C. at 552, 732 S.E.2d at 864 (holding a
court must look to the plain meaning of unambiguous statuto-
ry language). First-degree burglary requires that, at the time
the offender entered the dwelling, he intended to commit a
crime once inside. § 16–11–311(A). Violating the terms and
conditions of an order of protection is a crime. *See* § 16–25–
20(D) ("A person who violates the terms and conditions of an
order of protection issued ... under ... [the Act] ... is guilty
of a misdemeanor."). Gilliland argues unpersuasively that the
good intentions with which he unlawfully entered Victim's
home prevented his entry from rising to the level of a burgla-
ry; therefore, he is entitled to a directed verdict. Under his
interpretation, section 16–25–20(D) would criminalize only
abusive communications with the victim. Although an exten-
sive search of our case law revealed a paucity of burglaries
committed with benevolent intent, we find the plain language
of sections 16–25–20(D) and 16–11–311(A) makes no allowance

for good intentions. Neither statute purports to exclude a misdemeanor under section 16–25–20(D) from supporting a conviction of first-degree burglary. Neither statute requires a particular mental state for the violation of a protective order to become a criminal act. Neither statute establishes any exceptions or identifies violations that are not of a criminal nature. Accordingly, neither the trial court nor this court has the authority to impose such a limitation or exception.

 Even ignoring the fact Gilliland violated the protective order by breaking into Victim's home, ample direct and circumstantial evidence existed from which the jury could conclude he intended to commit a crime once inside. *See Weston*, 367 S.C. at 292–93, 625 S.E.2d at 648 (requiring an appellate court to find a case was properly submitted to the jury upon the presence in the record of "any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused"). The order of protection forbade Gilliland "to communicate or attempt to communicate with [Victim] in any way or to enter or attempt to enter [her] place of residence." Deputy Flood, Victim, and Gilliland himself testified he went to the home with the intent of talking to Victim. Moreover, Gilliland repeatedly admitted knowing the protective order barred him from communicating or attempting to communicate with Victim "in any way" or entering or attempting to enter her home. In spite of the protective order, he entered Victim's home and talked to her for hours. Consequently, sufficient evidence existed for this question to be submitted to the jury, and the trial court did not err in declining to direct a verdict in Gilliland's favor.

## II. Jury Instruction

Gilliland also asserts the trial court erred by refusing a jury instruction on the charge of trespass as a lesser included offense of first-degree burglary. We disagree.

 Generally, "the trial court is required to charge only the current and correct law of South Carolina." *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). To warrant reversal, a trial court's refusal to give a requested jury instruction "must be both erroneous and prejudicial to the defendant." *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d

93, 95 (Ct.App.2004). The evidence presented at trial determines the law to be charged to the jury. *Id.* at 261–62, 607 S.E.2d at 95.

"A trial [court] is required to charge a jury on a lesser included offense if there is evidence from which it could be inferred that a defendant committed the lesser offense rather than the greater." *State v. Drafts,* 288 S.C. 30, 32, 340 S.E.2d 784, 785 (1986). The test for determining whether one offense is a lesser included offense of another "is whether the greater of the two offenses includes all the elements of the lesser offense. If the lesser offense includes an element not included in the greater offense, then the lesser offense is not included in the greater." *Hope v. State,* 328 S.C. 78, 81, 492 S.E.2d 76, 78 (1997) (quoting *State v. Bland,* 318 S.C. 315, 317, 457 S.E.2d 611, 612 (1995)).

Finding Gilliland has failed to demonstrate error, we affirm. Absent error, we need not look for prejudice. *See Brown,* 362 S.C. at 262, 607 S.E.2d at 95 (requiring both error and prejudice for reversal of a trial court's refusal to give a requested jury instruction).

In determining trespass is not a lesser included offense of first-degree burglary, the trial court correctly relied on *State v. Cross,* 323 S.C. 41, 448 S.E.2d 569 (Ct.App.1994), which is on point and has never been overruled. In that case, the victim's former boyfriend entered her home twice, sexually assaulted her at knifepoint once, took some of her belongings, and forced her to accompany him to Myrtle Beach. *Id.* at 43, 448 S.E.2d at 569–70. Although the jury acquitted the defendant of several other charges, it found him guilty of two counts of first-degree burglary. *Id.* at 43, 448 S.E.2d at 569. The court of appeals affirmed. *Id.* at 44–45, 448 S.E.2d at 570. Gilliland contends our opinion in that case is inapplicable here because the State failed to prove all elements of trespass in *Cross.* However, the *Cross* court did not base its determinations concerning the relationship between trespass and burglary on the facts presented at Cross's trial. *Id.* Instead, it found neither statutory trespass nor common law criminal trespass was a lesser included offense of first-degree burglary, because each type of trespass requires the State to prove at least one element not present in first-degree burglary. *Id.* at

44, 448 S.E.2d at 570. Because the *Cross* court based its conclusion upon a properly conducted comparison of the elements of each offense and did not limit its holding to the facts of the case before it, the trial court in this matter did not err in relying on *Cross*.

## CONCLUSION

We find the plain language of sections 16–25–20(D) and 16–11–311(A) is unambiguous and sets forth no exception, exclusion, or requirement precluding an intent to violate an order of protection from qualifying, for the purposes of first-degree burglary, as an intent to commit a crime. Therefore, we affirm the trial court's denial of Gilliland's motion for a directed verdict.

Moreover, we find the trial court properly applied the elements test and this court's opinion in *Cross* when it determined trespass was not a lesser included offense of first-degree burglary. Accordingly, the trial court did not err in declining to charge the jury on trespass.

For these reasons, the decision of the trial court is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.