803 S.E.2d 44

The STATE, Respondent,

v.

Demario Monte THOMPSON, Appellant.

Appellate Case No. 2015-000126
Opinion No. 5492

Court of Appeals of South Carolina.

Heard April 11, 2017
Filed June 14, 2017
Rehearing Denied August 28, 2017

---

390

Appellate Defender John Harrison Strom, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia; and Solicitor Douglas A. Barfield, Jr., of Lancaster, all for Respondent.

LEE, A.J.:

Demario Monte Thompson appeals his convictions and sentences for first-degree burglary and third-degree assault and battery, arguing the trial court erred by (1) admitting a trespass notice letter into evidence; (2) admitting the entire recording of a 911 call into evidence; (3) denying his motion for a directed verdict on the first-degree burglary charge; and (4) denying his motion for a new trial. We affirm.

## FACTS/PROCEDURAL BACKGROUND

A Lancaster County grand jury indicted Thompson for first-degree burglary and attempted murder based on allegations he broke into Keasia Drafton's apartment and tried to kill her on July 2, 2014.[1] Before trial, Thompson moved to suppress a trespass notice letter stating he was banned from the apart-

---

1. Thompson was also indicted for possession or display of a firearm during a violent crime and two counts of pointing and presenting a firearm, but the trial court granted a directed verdict on these charges.

ment complex where Drafton lived. Thompson argued (1) the letter was irrelevant, (2) the letter presented impermissible character evidence, and (3) the letter's prejudicial effect substantially outweighed its probative value. The State contended because the letter proved Thompson did not live in Drafton's apartment, he did not have inherent consent to be there. Further, the State agreed it would not discuss the reason Thompson was banned from the apartment during trial. The trial court denied Thompson's motion.

At trial, Deputy Reuben Silberman testified he responded to a disturbance at an apartment complex between 4 a.m. and 5 a.m. on July 2, 2014. He recalled the apartment "door appeared to have been kicked in" because "[t]he deadbolt was still engaged[,] and the door was hanging slightly off its hinges." Deputy Silberman stated he spoke with Drafton, who was "very upset" and had wounds on her head and neck. The State introduced photos taken by Deputy Silberman depicting Drafton's wounds and the apartment door. Deputy Silberman believed the wound on Drafton's neck was due to strangulation. According to Deputy Silberman, Drafton answered the door in underwear and a tank top, and her clothes were torn. Deputy Silberman believed a physical altercation had occurred in the living room because "some things were thrown around the apartment."

Dominique Huff testified he lived in the apartment across from Drafton. Huff recalled he heard "a whole bunch of commotion" coming from Drafton's apartment and saw "the door was off the hinges." He stated he went back inside his apartment, but he came out again because "somebody yelled [someone] had a gun." He noted that when he came outside a second time, he saw Thompson "down by the trash can" arguing with a neighbor. Huff recalled Thompson raised his hand, but he could not tell if Thompson had a gun because it was dark. Huff indicated Drafton was crying and appeared "hysterical."

Janice Sager, the manager of Drafton's apartment complex, testified Thompson was not a resident at the apartment complex, and the State introduced the trespass notice letter over Thompson's objection. Sager explained she drafted the letter stating Thompson was banned from the apartment

complex at the direction of her district manager and Drafton signed it on March 18, 2014. The letter stated Drafton's lease would be terminated if she allowed Thompson into her apartment or onto the property, and it noted Thompson would be charged with trespassing.

During the testimony of Sandra Cauthen, Deputy Director of the Lancaster County Public Safety Communications, the State played a recording of a 911 call made by someone who identified herself as Drafton. Cauthen explained calls to 911 were automatically recorded, stored on a server for three years, and regularly maintained by the technology department. Cauthen stated she could not say with absolute certainty that Drafton was the caller. Thompson objected to the introduction of the recording, arguing (1) it was not properly authenticated to show Drafton was the caller and (2) it violated his Confrontation Clause rights because it was testimonial and Drafton did not testify.

In the 911 recording, a woman could be heard crying and stating she needed an officer. When the dispatcher explained an officer was in route, the woman responded, "[Inaudible]. He just kicked my door." The woman stated she did not need an ambulance. The dispatcher determined the man had a gun. When asked where the gun was, the woman said, "He got it in his hand." The woman indicated the man was pointing the gun at her. The woman stated the man's name was "Demario Thompson."

When the dispatcher asked for her name, the woman answered, "Keasia Drafton." The dispatcher said, "Yes, she said he's standing there with a gun in his hand." The caller stated, "He's gone. [Inaudible]. He ran." The dispatcher asked the woman to tell her what the man was wearing. The woman responded, "I don't know. I was asleep and he came kicking my door." A man could be heard in the background asking whether it was "Demario," and the woman replied, "Yes." The man asked which way he ran, and the woman said, "I don't know. He pointed it at the lady downstairs and then he ran." When asked what the man pointed, the woman stated he pointed a gun. When asked if the man hurt her, the woman responded, "Yes he kept pointing at—" before the recording cut off.

Suzanne Collins testified she was the dispatcher who answered the 911 call and indicated the recording accurately depicted the entirety of the call. Collins testified dispatchers rely on information a caller gives—such as the caller's identity—because dispatchers are unable to independently verify the information.

At the close of the State's case, Thompson moved for a directed verdict on the first-degree burglary charge, arguing the State did not present sufficient evidence to show (1) he did not have consent to enter Drafton's apartment and (2) he intended to commit a crime while inside. The trial court denied the motion, finding the record contained sufficient evidence to submit the issue to the jury. Thompson did not present any evidence at trial. The jury found Thompson guilty of first-degree burglary and third-degree assault and battery. After the verdict, Thompson moved for a new trial, and the trial court denied his motion. The trial court sentenced Thompson to fifteen years' imprisonment for first-degree burglary and time served for third-degree assault and battery. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless the findings are clearly erroneous." *State v. Spears*, 403 S.C. 247, 252, 742 S.E.2d 878, 880 (Ct. App. 2013).

**LAW/ANALYSIS**

**I. Trespass Letter**

Thompson asserts the trial court erred in admitting the trespass notice letter because the letter was irrelevant, impermissible hearsay evidence, impermissible character evidence, and unfairly prejudicial. We disagree.

■ "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* This court will not reverse the trial court's decision regarding a Rule 403 objection absent

an abuse of discretion and resulting prejudice. *State v. Gray*, 408 S.C. 601, 608, 759 S.E.2d 160, 164 (Ct. App. 2014).

## A. Relevance

■ Thompson argues the letter was not relevant because (1) he needed the tenant's consent to enter the apartment, not the landlord's consent; (2) the State presented no evidence he was aware of the letter; and (3) the letter was signed four months before the incident giving rise to his charges. We disagree.

■ "Evidence which is not relevant is not admissible." Rule 402, SCRE. "Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears." *State v. Alexander*, 303 S.C. 377, 380, 401 S.E.2d 146, 148 (1991).

We find the letter was relevant to the element of consent in first-degree burglary. *See State v. Cross*, 323 S.C. 41, 43, 448 S.E.2d 569, 570 (Ct. App. 1994) ("First[-]degree burglary requires the entry of a dwelling without consent with the intent to commit a crime therein, as well as the existence of an aggravating circumstance."). The letter shows Thompson was not a resident of the apartment complex. Therefore, Thompson would not have a possessory interest in Drafton's apartment or inherent consent to be there, requiring him to receive Drafton's consent before entering the apartment. Accordingly, we find the letter was relevant to an element of first-degree burglary in Thompson's case.

## B. Hearsay

■ Thompson asserts the letter was impermissible hearsay because it was offered to prove the fact that Drafton, the declarant, did not consent to Thompson entering her apartment. We disagree.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Rule 801(c), SCRE. Hearsay is inadmissible unless an exception or an exclusion applies. Rule 802, SCRE. One such exception is the business records exception, which states:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness. . . .

Rule 803(6), SCRE.

We find the letter was not impermissible hearsay because it fell under the business records exception. Although Thompson argues the letter was a statement made by Drafton, we disagree and find Sager was the declarant. At trial, Sager testified she drafted the trespass notice letter at the request of her district manager to inform Drafton that Thompson was banned from the apartment complex. The letter was drafted by Sager in her capacity of manager of the apartment complex on the apartment's letterhead, and she authenticated it during her testimony at trial. Therefore, we find the trial court did not abuse its discretion in finding the letter was a business record.

## C. Prior Bad Act

■ Thompson argues the letter was impermissible character evidence because it indicated he committed a prior bad act to justify banning him from the apartment complex. We disagree.

■ "Character evidence is not admissible to prove the accused possesses a criminal character or has a propensity to commit the crime with which he is charged." *State v. Brown*, 344 S.C. 70, 73, 543 S.E.2d 552, 554 (2001). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. "It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." *Id.* "In addition, the 'bad act' must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing." *State v. Beck*, 342 S.C. 129, 135,

536 S.E.2d 679, 682-83 (2000). "Once bad act evidence is found admissible under Rule 404(b), the trial court *must* then conduct the prejudice analysis required by Rule 403, SCRE." *Spears*, 403 S.C. at 253, 742 S.E.2d at 881 (emphasis added by court) (quoting *State v. Wallace*, 384 S.C. 428, 435, 683 S.E.2d 275, 278 (2009)).

We find the letter did not constitute improper character evidence. A person could be banned from an apartment for many reasons that do not include committing a prior bad act. Although the letter mentioned Thompson was banned from the apartment complex by the Lancaster County Sheriff's Department, it specified it was at the direction and "on behalf of" the apartment complex. Furthermore, Sager did not testify as to why Thompson was banned from the apartment complex. We therefore find the trial court did not err in ruling the letter was not evidence of a prior bad act.

### D. Unfair Prejudice

Thompson contends the danger of unfair prejudice substantially outweighed the letter's probative value because it would mislead the jury into wrongfully concluding (1) he did not have consent to enter the apartment and (2) he had an intent to commit a crime inside the apartment. We disagree.

A trial court may exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. Rule 403, SCRE. Probative value means "the measure of the importance of that tendency to [prove or disprove] the outcome of a case. It is the weight that a piece of relevant evidence will carry in helping the trier of fact decide the issues." *Gray*, 408 S.C. at 610, 759 S.E.2d at 165. "Unfair prejudice means an undue tendency to suggest decision on an improper basis." *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009). "A trial court's decision regarding the comparative probative value versus prejudicial effect of evidence should be reversed only in exceptional circumstances." *State v. Grace*, 350 S.C. 19, 28, 564 S.E.2d 331, 335 (Ct. App. 2002).

We find the trial court did not err in ruling the potential prejudice for the letter did not substantially outweigh its probative value. The relevancy of the letter to the element of consent outweighed any prejudicial effect it may have had.

Although the letter may have invited speculation by the jury because it did not specify why Thompson was banned from the apartment complex, we find the danger of unfair prejudice from such speculation was slight compared to the relevancy of the letter. Accordingly, we affirm the trial court's admission of the letter.

## II. 911 Recording

Thompson argues the trial court erred in admitting the 911 recording into evidence because it was not properly authenticated and violated his confrontation clause rights. We disagree.

First, we disagree with Thompson's argument the State was required to present testimony of a witness identifying the caller's voice as belonging to Drafton in order to properly authenticate the 911 recording. Rule 901(a) of the South Carolina Rules of Evidence requires authentication "as a condition precedent to admissibility ... by evidence sufficient to support a finding that the matter in question is what its proponent claims." For this purpose, the rule provides a list of ten examples illustrating how a party can properly authenticate evidence. *See* Rule 901(b), SCRE. However, Rule 901 explicitly states the examples listed in subsection b are "by way of illustration only" and are not intended to be an exhaustive list of the ways to properly authenticate evidence. The rule provides a voice may be identified "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Rule 901(b)(5), SCRE. Furthermore, telephone conversations with an individual can be authenticated "by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if ... circumstances, including self-identification, show the person answering to be the one called." Rule 901(b)(6), SCRE.

Authentication of a 911 caller's identity can be accomplished by combining the caller's self-identification with circumstances surrounding the call. Here, the testimony of Cauthen and Collins coupled with the fact that the information the caller gave the dispatcher was confirmed by police when they arrived at the scene proved the recording was reliable, satisfy-

ing the purpose of the authentication requirement. Cauthen explained calls to 911 were automatically recorded, stored on a server for three years, and maintained by the technology department. Collins, the dispatcher who spoke with Drafton, testified the recording played at trial was an accurate representation of the 911 call. The caller identified herself as Drafton and informed the dispatcher she needed an officer because Thompson "came kicking [at her] door" while she was asleep and pointed a gun at her. Deputy Silberman indicated he spoke with Drafton after arriving at the scene and her apartment "door appeared to have been kicked in" because "[t]he deadbolt was still engaged and the door was hanging slightly off its hinges." The evidence presented at trial sufficiently establishes the 911 call was what it purported to be— an emergency call made by Drafton.

Furthermore, courts in other jurisdictions have also held a witness is not required to identify a caller's voice when the circumstances surrounding the call indicate the information given by the caller is accurate. *See United States v. Espinoza*, 641 F.2d 153, 170 (4th Cir. 1981) (holding the testimony of a telephone conversation was admissible "even though the witness cannot certainly identify the person with whom he spoke by voice identification, [when] the identity of the person ... [was] established by circumstantial evidence"); *Rodriguez-Nova v. State*, 295 Ga. 868, 763 S.E.2d 698, 701 (2014) ("[A]n audio recording can be authenticated by the testimony of one party to the recorded conversation."); *Young v. State*, 696 N.E.2d 386, 389 (Ind. 1998) ("A caller's identity can be established by circumstantial evidence, and need not be proven beyond a reasonable doubt."); *Johnson v. State*, 699 N.E.2d 746, 749 (Ind. Ct. App. 1998) ("A recording is not admissible unless the voices contained thereon are identified. ... However, circumstantial evidence may be utilized for identification purposes."); *State v. C.D.L.*, 250 P.3d 69, 78 (Utah Ct. App. 2011) ("Authentication of a telephone caller's identity can be accomplished by combining that caller's self-identification during the call with circumstances surrounding the call."); *State v. Williams*, 136 Wash.App. 486, 150 P.3d 111, 118 (2007) ("A sound recording, in particular, need not be authenticated by a witness with personal knowledge of the events recorded. Rather, the trial court may consider any information sufficient to

support the prima facie showing that the evidence is authentic.").

Next, we disagree with Thompson's contention the 911 call contained testimonial statements that violated his Confrontation Clause rights. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend VI. In *Crawford v. Washington*, the United States Supreme Court held the admission of testimonial hearsay statements against an accused violates the Confrontation Clause if (1) the declarant is unavailable to testify at trial and (2) the accused has no prior opportunity to cross-examine the declarant. 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court explained the difference between nontestimonial and testimonial statements in *Davis v. Washington*:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

We find this case to be more like *Davis* than *Crawford* and the recording did not violate Thompson's Confrontation Clause rights. Although Drafton did not testify at trial, her statements on the 911 call were made to obtain police assistance, and the questions during the call were to elicit more information to enable police to assist her. For the first ninety seconds of the recording, the dispatcher asked Drafton questions about present events, such as if Thompson was pointing the gun at her and if she needed an ambulance. *See id.* at 827, 126 S.Ct. 2266 (considering whether an interviewee "was speaking about events *as they were actually happening*" to determine if a 911 call was testimonial). During the call, Drafton informed the dispatcher Thompson kicked in her door while she was asleep and pointed a gun at her and a neighbor. Furthermore, Drafton was upset, breathing hard, and trying to calm down

throughout the call. Although the dispatcher and a man at the scene asked five questions after Drafton informed them Thompson was no longer at her apartment, the questions were necessary to gather information to assist officers in determining where the perpetrator went and if Drafton needed medical attention. *See id.* (considering whether the interrogator asked questions that "elicited statements [that] were necessary to be able to *resolve* the present emergency" when determining if a 911 call was testimonial).

## III. Directed Verdict

Thompson contends the trial court erred in denying his motion for a directed verdict, claiming the State failed to prove he gained entry to Drafton's apartment, intended to commit a crime once inside the apartment, or caused injuries to Drafton. We disagree.

 "An appellate court reviews the denial of a directed verdict by viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State." *State v. Gilliland*, 402 S.C. 389, 397, 741 S.E.2d 521, 525 (Ct. App. 2012). "When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "Accordingly, in ruling on a directed verdict motion [when] the State relies on circumstantial evidence, the court must determine whether the evidence presented is sufficient to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt." *State v. Pearson*, 415 S.C. 463, 473, 783 S.E.2d 802, 807-08 (2016) (quoting *State v. Bennett*, 415 S.C. 232, 237, 781 S.E.2d 352, 354 (2016)). " '[W]hen the [circumstantial] evidence presented merely raises a suspicion of guilt,' the trial court should direct a verdict in favor of the accused." *Gilliland*, 402 S.C. at 397, 741 S.E.2d at 525 (second alteration by court) (quoting *State v. Bostick*, 392 S.C. 134, 142, 708 S.E.2d 774, 778 (2011)). "A mere suspicion is a belief that is inspired by 'facts or circumstances which do not amount to proof.' " *Id.* at 397, 741 S.E.2d at 526 (quoting *State v. Lollis*, 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001)).

"First[-]degree burglary requires the entry of a dwelling without consent with the intent to commit a crime therein, as well as the existence of an aggravating circumstance." *Cross*, 323 S.C. at 43, 448 S.E.2d at 570. " 'Enters a building without consent' means: (a) [t]o enter a building without the consent of the person in lawful possession; or (b) [t]o enter a building by using deception, artifice, trick, or misrepresentation to gain consent to enter from the person in lawful possession." S.C. Code Ann. § 16-11-310 (2015).

Here, the evidence presented by the State warranted submission of the case to the jury. The State presented substantial circumstantial evidence tending to prove Thompson entered Drafton's apartment without consent and with the intent to commit a crime. The trespass notice letter coupled with the circumstances of Thompson's entry show he did not have Drafton's consent to enter the apartment. The 911 call provides further evidence of whether Drafton consented to Thompson entering the apartment, as Drafton was audibly upset during the call and indicated Thompson kicked in her apartment door while she was sleeping. Furthermore, Thompson's intent to commit a crime can be inferred by the circumstances of his entry coupled with Drafton's injuries. *See State v. Tuckness*, 257 S.C. 295, 299, 185 S.E.2d 607, 608 (1971) ("Intent is seldom susceptible to proof by direct evidence and must ordinarily be proved by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred."). Deputy Silberman and Huff both testified Drafton's apartment door had been kicked in and was hanging off the hinges. Deputy Silberman testified Drafton had injuries to her head and neck, and it appeared she had been strangled. The photographs admitted into evidence further show Drafton's injuries on her face and neck. Finally, evidence suggested Thompson gained entry into Drafton's apartment after kicking in the door. Huff testified he heard a commotion coming from Drafton's apartment, and Deputy Silberman recalled it looked like a struggle occurred inside the apartment because Drafton's belongings were thrown around. Moreover, Drafton indicated in the 911 recording Thompson kicked down her door while she was asleep and pointed a gun at her. Therefore, we find no error in the trial court's denial of Thompson's motion for a directed verdict.

## IV. New Trial

Last, Thompson asserts the trial court erred in denying his motion for a new trial, when the cumulative effect of the errors was so prejudicial as to deprive him of a fair trial. We find no merit to the argument, as we find no error on the part of the trial court.

 "Generally, the grant or refusal of a new trial is within the trial [court]'s discretion and will not be disturbed on appeal without a clear abuse of that discretion." *State v. Garrett*, 350 S.C. 613, 619, 567 S.E.2d 523, 526 (Ct. App. 2002). "Whe[n] there is competent evidence to sustain a jury's verdict, the trial [court] may not substitute [its] judgment for that of the jury and overturn that verdict." *State v. Miller*, 287 S.C. 280, 283, 337 S.E.2d 883, 885 (1985). "The cumulative error doctrine provides relief to a party when a combination of errors, insignificant by themselves, has the effect of preventing the party from receiving a fair trial, and the cumulative effect of the errors affects the outcome of the trial." *State v. Beekman*, 405 S.C. 225, 237, 746 S.E.2d 483, 490 (Ct. App. 2013), *aff'd*, 415 S.C. 632, 785 S.E.2d 202 (2016). "An appellant must demonstrate more than error in order to qualify for reversal pursuant to the cumulative error doctrine; rather, he must show the errors adversely affected his right to a fair trial to qualify for reversal on this ground." *Id.*

Because we have found no errors in regard to the other issues Thompson raised on appeal and Thompson does not point to any other errors made by the trial court, this issue is without merit. *See State v. Kornahrens*, 290 S.C. 281, 290, 350 S.E.2d 180, 186 (1986) (holding when an appellate court found no errors, appellant's assertion the trial court should have granted a new trial because of the cumulative effect of the asserted trial errors had no merit).

## CONCLUSION

We reject Thompson's various challenges to his convictions of first-degree burglary and third-degree assault and battery. We find the trial court properly admitted the trespass notice letter and 911 recording. We further hold the State presented sufficient evidence Thompson broke into Drafton's apartment without her consent and with the intent to injure her to survive his motion for a directed verdict on the first-degree

burglary charge. Finally, we find the trial court properly denied Thompson's motion for a new trial. Accordingly, the decision of the trial court is

**AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.